(941 P.2d 390)
No. 78,523

KANSAS PIPELINE PARTNERSHIP, *Petitioner/Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Respondent/Appellee*, and WESTERN RESOURCES, INC., WILLIAMS NATURAL GAS COMPANY, and CITIZENS UTILITY RATEPAYER BOARD, *Intervenors/Appellees*.

Opinion filed June 20, 1997.

*Fred J. Logan, Jr.*, of Logan & Logan, of Prairie Village, and *James P. Zakoura* and *Richard W. Hird*, of Smithyman & Zakoura, of Overland Park, for the appellant.

*John J. McNish, Janette W. Corazzin*, and *Larry Cowger*, assistants general counsel, of the Kansas Corporation Commission, of Topeka, for the appellee.

*J. Michael Peters*, associate general counsel, for intervenor Western Resources, Inc.

*A. Brady Cantrell*, for intervenor Citizens Utility Ratepayer Board.

*Kevin M. Fowler* and *John C. Frieden*, of Frieden, Haynes & Forbes, of Topeka, for intervenor Williams Natural Gas Company.

Before BRAZIL, C.J., LEWIS and GREEN, JJ.

LEWIS, J.: This rate case is on its second appeal to this court. On the first appeal, we reversed the decision of the Kansas Corporation Commission (KCC) and remanded it for additional findings. This appeal is from the decision reached by the KCC on remand.

The petitioner/appellant is Kansas Pipeline Partnership (KPP), which strongly disagrees with the decision of the KCC on remand. At the time of the original rate hearings in 1994, KPP was associated in interest with Kansas Natural Partnership (KNP). At that time and in our first opinion, we referred to KPP and KNP as the "Joint Applicants." KPP and KNP have now merged under the name of KPP. Technically speaking, they are no longer Joint Ap-

plicants. However, for the purposes of continuity, we shall continue to refer to KPP and KNP as the Joint Applicants.

The respondent/appellee is the KCC, from whose order this appeal is being pursued.

There are several intervenors, all of whom appear to be united in interest in urging us to affirm the most recent decision of the KCC. They are Williams Natural Gas Company, which was the petitioner on the first appeal; Western Resources, Inc., which was not a party to the first appeal; and the Citizens Utility Ratepayer Board, which was also not a party to the first appeal. The intervenors have all filed briefs on this appeal and were granted the opportunity to deliver oral argument to this court.

As pointed out above, all parties except the Joint Applicants argue in favor of the KCC decision on remand. The Joint Applicants strongly argue that the KCC's order is in error and should be reversed.

Our original decision in this case is reported in *Williams Natural Gas Co. v. Kansas Corporation Comm'n*, 22 Kan. App. 2d 326, 916 P.2d 52, *rev. denied* 260 Kan. 1002 (1996). Those interested are referred to that opinion for a detailed statement of the facts involved on the first appeal and, to an extent, on this appeal.

In its original rate orders, the KCC permitted the Joint Applicants to add to their rate base and to recover through the rates approved certain "market entry costs" incurred by Phenix Transmission Company (Phenix) and by Kansas Pipeline Company, L.P. (KPCLP). A total of $12.95 million in market entry costs was permitted to be added to the rate base of the Joint Applicants. Of this, some $10 million came from or was incurred by Phenix, and $2.95 million came from or was incurred by KPCLP. In addition to those market entry costs, another $1 million in carrying costs was permitted to be added to the rate base in connection with the market entry costs incurred by KPCLP. These market entry costs are in the nature of net operating losses incurred by Phenix and KPCLP.

In the original rate proceedings, one of the commissioners dissented from the order and said, among other things: "Simply stated, the joint applicants did not experience the $10.5 and $2.95 million shortfall nor did they assume any part of a debt that rep-

resents these sums. It stretches the bounds of intellectual integrity, albeit a most creative effort, that one could characterize the short-falls and projected earnings on revenues as an asset."

We agreed with those comments. Our examination of the record did not reveal any evidence to show that the Joint Applicants had either acquired or incurred the operating losses of KPCLP or Phenix. Since these losses were all incurred prior to the duration and existence of the Joint Applicants, it seemed quite obvious that the Joint Applicants could not possibly have incurred the costs in question.

We reversed the KCC's rate order and remanded it for additional findings. In doing so, we held in Syl. ¶ 3 as follows: "The Kansas Corporation Commission has no power to permit an entity to add to its rate base or otherwise recover costs which were not incurred by that entity but were incurred by a previous unrelated entity and were not later acquired by the entity seeking recovery of such costs." 22 Kan. App. 2d 326. Since we were not then and are not now finders of fact, we reversed the orders of the KCC relating to the allowance of market entry costs and remanded the case for additional findings. Specifically, we held:

"The orders authorizing the Joint Applicants to recover market entry costs and carrying costs are reversed. The matter is remanded to the KCC with the following directions:

"(1) The KCC must determine if, when, and how the Joint Applicants acquired market entry costs incurred by two unrelated entities prior to the formation of the Joint Applicants. If necessary, the KCC may hold additional hearings and may receive additional evidence on the issues in question.

"(2) If the market entry costs were neither incurred nor acquired by the Joint Applicants, the KCC shall not permit such costs to be added to the Joint Applicants' rate base or recovered by Joint Applicants in any fashion.

"(3) In the event the KCC finds that the market entry costs and carrying costs were acquired by the Joint Applicants, the KCC should restore its earlier orders authorizing recovery of those costs." 22 Kan. App. 2d at 339.

## REMAND

In our order of remand, we did not require the KCC to follow any specific procedures in determining the issues remanded. We required a determination of certain facts, but we left the method

of that determination to the KCC. Specifically, we left it to the discretion of the KCC whether to hold additional hearings or to receive additional evidence. 22 Kan. App. 2d at 339.

The KCC resolved the issues remanded without holding additional evidentiary hearings and without hearing additional evidence. The Joint Applicants requested a hearing and a prehearing conference on remand. This request was denied. The parties were given the opportunity to file original and responsive briefs on the questions to be decided.

The Joint Applicants requested the right to offer additional evidence on the subject at hand and eventually made a specific proffer of additional evidence. The KCC denied this request and determined the issues on remand without receiving additional evidence.

After the briefing process had been completed, the KCC issued its order on remand in which it found that the Joint Applicants did not incur or acquire the market entry costs of Phenix or KPCLP. The net effect of this finding was that the original rates authorized by the KCC and collected by the Joint Applicants were illegal. Accordingly, the KCC ordered the Joint Applicants to refund to their customers that portion of any rates collected which represented the inclusion of the disallowed market entry costs in the rate base. Commissioner Susan Seltsam dissented from these decisions.

The Joint Applicants filed a timely motion for reconsideration, which was denied. The KCC then issued two nunc pro tunc orders which corrected errors or admissions in the earlier orders. The Joint Applicants filed a second motion for reconsideration. Although the KCC has never formally ruled on this second motion, it is deemed denied because a petition for reconsideration which is not ruled on within 20 days of its filing is deemed denied by operation of law. K.S.A. 1996 Supp. 77-529(b).

Having exhausted its administrative remedies, the Joint Applicants filed a timely petition for judicial review with this court.

## JURISDICTION

There has been no challenge by either party or any of the intervenors to the jurisdiction of this court.

We have, nevertheless, considered the issue and hold that we have jurisdiction to decide the issues raised on appeal.

On the question of jurisdiction, we conclude as follows: (1) The Joint Applicants have exhausted their administrative remedies. (2) The application for judicial review was timely filed. (3) Pursuant to K.S.A. 1996 Supp. 66-118a(b), this court has exclusive jurisdiction to review any agency action of the KCC arising from a rate hearing requested by a public utility. (4) The Joint Applicants are natural gas distributing companies and are, therefore, public utilities pursuant to K.S.A. 66-104. (5) All the necessary statutory requirements have been complied with in order to vest this court with exclusive jurisdiction to decide the issues raised on appeal.

## STANDARD OF REVIEW

Pursuant to K.S.A. 66-118c, our review of an order of the KCC is in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA). The Joint Applicants argue that the KCC erroneously interpreted or applied the law, that the KCC's order is not supported by substantial evidence, and that the KCC's decision is otherwise unreasonable, arbitrary, or capricious.

K.S.A. 77-621 states, in relevant part:

"(a) Except to the extent that this act or another statute provides otherwise:

(1) The burden of proving the invalidity of agency action is on the party asserting invalidity; and

(2) the validity of agency action shall be determined in accordance with the standards of judicial review provided in this section, as applied to the agency action at the time it was taken.

. . . .

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

(4) the agency has erroneously interpreted or applied the law;

. . . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious."

Operation of the KJRA is discussed in *Crawford v. Kansas Dept. of Human Resources*, 17 Kan. App. 2d 707, 708, 845 P.2d 703 (1989), *rev. denied* 246 Kan. 766 (1990):

"Judicial review of orders of an administrative body is governed by the [KJRA]. The scope of review is stated in K.S.A. 77-621. The agency's findings are presumed valid on review and the agency's order may only be set aside by the district court if it is not supported by substantial competent evidence, is without foundation in fact, or is otherwise unreasonable, arbitrary, or capricious. [Citation omitted.]

"Judicial review is limited to these questions of law. K.S.A. 77-621 does not limit a court's review of an agency's interpretation or application of a matter of law. In reviewing a question of law, a court may substitute its judgment for that of the agency. [Citation omitted.]"

Therefore, this court must determine if the issues presented on appeal are questions of fact or questions of law. On questions of fact, the court should merely determine if there is substantial evidence to support the KCC's orders.

" 'Substantial evidence' is defined as evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.] Stated another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.] It is not the function of an appellate court to reweigh the evidence; we are concerned only with the evidence which supports the findings below, and not the evidence which might have supported contrary conclusions. [Citation omitted.]" *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. 1, 21, 687 P.2d 603 (1984).

Further guidance on scope of review is provided in *Kansas Gas & Electric Co. v. Kansas Corporation Comm'n*, 239 Kan. 483, 496-97, 720 P.2d 1063 (1986):

"We should next consider the scope of judicial review where an appeal is taken to the courts from an order of the KCC in a rate-making case. The scope of review is discussed in the decision of the Court of Appeals in *Midwest Gas Users Ass'n v. Kansas Corporation Commission*, 3 Kan. App. 2d 376, 380-81, 595 P.2d 735, *rev. denied* 226 Kan. 792 (1979), where the court stated:

'K.S.A. 1978 Supp. 66-118d limits judicial review of an order by the commission to determining whether the order is "lawful" or "reasonable." [Citation omitted.] A court has no power to set aside such an order unless it finds that the commission acted unlawfully or unreasonably. [Citation omitted.] An order is "lawful" if it is within the statutory authority of the commission, and if the prescribed statutory and procedural rules are fol-

lowed in making the order. [Citation omitted.] An order is generally considered "reasonable" if it is based on substantial competent evidence. [Citation omitted.]

'The legislature has vested the commission with wide discretion and its findings have a presumption of validity on review. [Citation omitted.] Since discretionary authority has been delegated to the commission, not to the courts, the power of review does not give the courts authority to substitute their judgment for that of the commission. [Citation omitted.] The commission's decisions involve the difficult problems of policy, accounting, economics and other special knowledge that go into fixing utility rates. It is aided by a staff of assistants with experience as statisticians, accountants and engineers, while courts have no comparable facilities for making the necessary determinations. [Citation omitted.] Hence a court may not set aside an order of the commission merely on the ground that it would have arrived at a different conclusion had it been the trier of fact. It is only when the commission's determination is so wide of the mark as to be outside the realm of fair debate that the court may nullify it. [Citations omitted.]' "

"The Commission is vested with wide discretion and its findings have a presumption of validity on review. [Citation omitted.] The Commission is presumed to act fairly, reasonably, and impartially." *Southwest Kan. Royalty Owners Ass'n · v. Kansas Corporation Comm'n*, 244 Kan. 157, 165, 769 P.2d 1 (1989).

As stated above, this court should assume the KCC's actions are valid unless they are unlawful or unreasonable.

## MARKET ENTRY COSTS

The Joint Applicants attack the KCC's decision that they did not incur or acquire the market entry costs in question. This attack is bifurcated. On the one hand, they argue that the KCC erred in not reopening the record for additional evidence on the issues presented. On the other hand, and somewhat inconsistently, the Joint Applicants argue that the record, as originally constituted, contains substantial competent evidence to show that they acquired the market entry costs in question and that the KCC findings to the contrary are not supported by substantial competent evidence. It is apparent that these two arguments are mutually irreconcilable.

### A. Refusal to reopen record

Even though the Joint Applicants insist there was sufficient ev-

idence in the original record to show that they acquired the market entry costs in question, they also argue that it was error not to reopen the record and allow them to admit even more evidence on the question. We suspect they find themselves in this conundrum because of their desire to "touch all the bases" in an effort to reverse the KCC's orders.

On the question of the reopening of the record, the Joint Applicants appear to suggest that our order of remand *required* the KCC to admit additional evidence on remand. This is simply untrue and represents a gross misreading of our opinion. We said: *"If necessary*, the KCC *may* hold additional hearings and *may* receive additional evidence on the issues in question." (Emphasis added.) 22 Kan. App. 2d at 339. As the emphasized portion of our opinion shows, we did not require that the KCC hold additional hearings or receive additional evidence. Those questions were left to the discretion of the KCC.

We have examined the record, and we see no abuse of discretion by the KCC in its decision not to reopen the record and not to hear additional evidence.

As the KCC noted:

"The record made in this proceeding is extensive (the official record contained 17,364 pages reflecting the testimony of 29 witnesses during 17 days of hearings and containing 64 motions, 39 separate orders, 12 post hearing motions, and 11 separate post hearing orders), and the initial briefs and reply briefs have provided substantial assistance in reviewing the record and understanding the arguments for and against the acquisition or incurrence of market entry cost."

If a party finds itself unable to squeeze all of its evidence on the issue into a record of this size, then it is beyond our help.

The Joint Applicants suggest that whether they incurred or acquired the market entry costs in question was not really an issue explored in the initial 17,364 pages of testimony. We disagree. There was abundant time and space devoted to this issue in those 17,364 pages. In fact, the issue was so significant that Commissioner Timothy McKee made it the sole object of his dissent. The Joint Applicants' argument that market entry costs were not an issue in the original rate hearing is without merit.

During oral argument, the Joint Applicants produced evidence which they proffered to the KCC and suggested to us that this evidence required that the record be reopened. We do not agree. At some point, enough is enough and the record must be closed. We think 17,364 pages of record is enough.

In addition, the regulations specifically addressed when the KCC may reopen the record. The KCC's regulations provide: "After the record of testimony has been closed by the person presiding at the hearing, any party may apply to reopen the record for good cause shown. However, no record shall be reopened for further hearing except upon order of the commission." K.A.R. 82-1-230(l). For purposes of reconsideration, the additional evidence must have either been not available or not known to exist at the time of the hearing. K.A.R. 82-1-235(c)(4). In addition to all of that, the nature and purposes of the evidence must be briefly stated and cannot merely be cumulative. K.A.R. 82-1-235(d). On remand, we cannot find in the record where the Joint Applicants alleged that the additional evidence it sought to proffer on remand was either unavailable or not known to exist at the time of the hearing. Given all the circumstances, KCC's decision not to reopen the record is supported by its regulations.

We note that the Joint Applicants made at least three proffers to the KCC. The first proffer was admittedly generic in nature. The second was only slightly less generic. It was not until the third proffer that the Joint Applicants began to produce substantive documentary evidence. By then, it was apparently too little, too late. We cannot imagine why this evidence was not offered at the original hearing, and the Joint Applicants have not provided a believable answer to that question. To argue that market entry costs really were not an issue and so they did not prove how or when they were acquired is not a reasonable or believable explanation. Market entry costs were an issue, and the Joint Applicants' obligation was to offer all of their best evidence at the original hearing, and they apparently failed to do so.

In summary, we hold that the KCC did not abuse its discretion in refusing to reopen the record and hear additional evidence on the question of the acquisition of the market entry costs.

## B. The original record

The next issue was whether the original record supports the findings of the KCC that the Joint Applicants neither incurred nor acquired the market entry costs in question. As pointed out above, the Joint Applicants, having argued that the record should have been reopened, now make that argument irrelevant, insisting that the original record requires a finding that they did acquire or incur the market entry costs of Phenix and KPCLP.

We remanded for findings on the question of whether the Joint Applicants somehow acquired the market entry costs in question.

The Joint Applicants had the burden of proving they were entitled to the rate increase. That included the burden of proving that they somehow acquired the market entry costs of unrelated entities. The KCC on remand made the following findings in its order denying reconsideration:

"In conclusion, KPP is the applicant in this matter. As such, KPP bears the burden of proving that it is entitled to recover an award of market entry costs. *KPP has failed to meet this burden. The Commission finds that the record does not contain evidence demonstrating that KPP either incurred or acquired the so-called market entry costs.*"

This is a negative finding and has significant impact on our standard of review: "[A] negative finding that a party did not carry its requisite burden of proof will not be disturbed on appeal absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice." *Beech Aircraft Corp. v. Kansas Human Rights Comm'n*, 254 Kan. 270, 275, 864 P.2d 1148 (1993).

In addition, in *Chris Hunt Water Hauling Contractor, Inc. v. Kansas Corporation Comm'n*, 10 Kan. App. 2d 612, 617, 706 P.2d 825 (1985), we said:

"While a finding of fact will not be upset on appeal if there is any substantial competent evidence to support it, a negative finding will only be overturned if there is proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice. *Lostutter v. Estate of Larkin*, 235 Kan. 154, 162-63, 679 P.2d 181 (1984). This is true because a negative finding signifies the failure of the party on whom the burden of proof was cast to sustain it. Since it appears that the commission properly placed the burden of proof on

the protestants to show an inconsistency with public convenience and necessity, and that it found that they failed to carry this burden of proof, the negative finding should stand unless there was a disregard of undisputed testimony."

We see nothing in the record to indicate the KCC was guilty of bias, passion, or prejudice or that it disregarded any undisputed evidence. In short, we see no reason to reverse the finding of the KCC that the Joint Applicants failed to carry their burden of proof.

The KCC made specific and extensive factual findings on the question of whether the Joint Applicants acquired the market entry costs in question. We have reviewed those findings and conclude that they are supported by substantial competent evidence.

The Joint Applicants argue that the KCC ignored its own accounting orders, which they suggest preserve the market entry costs as further regulatory assets. We disagree with that proposition. The KCC dealt with this contention as follows with regard to the Phenix accounting order:

"The October 30, 1991 accounting order does not reflect that the short fall of revenue was experienced by an entity other than KNP nor does the accounting order establish that KNP assumed any of the liabilities associated with the short fall of revenue which were experienced by Phenix. The October 30, 1991 accounting order does not establish that KNP incurred any market entry costs during the period in question. It is also clear that KNP's acquisition of the Phenix assets was just that, an asset purchase, not a stock or equity purchase, which would have brought with the stock all of the interest, both positive and negative, of Phenix."

Virtually the same findings were made concerning KPCLP.

The Joint Applicants' argument regarding the accounting orders is without merit.

The Joint Applicants next argue that the transfer of the KPCLP and Phenix certificates of convenience and necessity to the Joint Applicants transferred the market entry costs and that no further action was necessary. This argument formed the basis of the dissent of Commissioner Seltsam to the order on remand.

We reject the proposition that the transfer of a certificate of convenience and necessity from one holder to the next can carry with it, without specific comment, the unrecovered market entry costs of the prior holder. We do not believe this document carries

with it anything more than the authority to operate as a public utility.

The purpose of a certificate of convenience and necessity is clearly defined by K.S.A. 66-131 as follows:

"No common carrier or public utility, including that portion of any municipally owned utility defined as a public utility by K.S.A. 66-104, governed by the provisions of this act *shall transact business in the state of Kansas until it shall have obtained a certificate from the corporation commission that public convenience will be promoted by the transaction of said business and permitting said applicants to transact the business of a common carrier or public utility in this state.*" (Emphasis added.)

K.S.A. 1996 Supp. 66-136 makes it clear that no transfer, sale, or assignment of a certificate of convenience and necessity can be valid unless and until it is approved by the KCC.

A certificate of convenience and necessity is, in essence, a license or authority issued by the KCC to an entity which desires to operate as a public utility in this state. It carries with it only the right to operate as a public utility, and no entity may operate as a public utility without it. However, it does not carry with it any of the other assets of the holder. Those other assets must be transferred by contract, bill of sale, certificate of title, etc.

The certificates of convenience and necessity transferred to the Joint Applicants in this case do not purport to transfer any loss carried forward, unrecovered market entry costs, or, for that matter, any other assets of Phenix or KPCLP. We have examined them as they appear in the record, and we conclude that they transfer only the authority to operate as a public utility. They did not, in this case and would not in most cases, transfer from the holder to the new holder any of the assets of the original holder other than the right to operate as a public utility.

The overwhelming evidence in this case is that the transactions between the Joint Applicants, Phenix, and KPCLP involve only the physical pipeline facilities. There is no evidence that the Joint Applicants assumed all of the debts and liabilities of Phenix and/or KPCLP. There is no evidence that the market entry costs were purchased or acquired. As we pointed out in our first opinion, the Joint Applicants acquired $44 million worth of hard assets and

added them to their rate base after the purchase. They now seek to argue that they somehow also acquired somewhere in the neighborhood of $53 million more in losses or market entry costs. The problem is that they did not pay for the alleged "assets" and have no proof that they acquired them.

In the final analysis, it does not matter whether Phenix and KPCLP were corporations or partnerships. The purchases were asset purchases only. The KCC has determined that the Joint Applicants did not acquire the market entry costs of those entities, and we affirm that finding.

## THE REFUND

After determining that the rate initially allowed was unlawful because it included the market entry costs as a part of the rate base, the KCC ordered the Joint Applicants to refund to their customers that part of the rate which they had collected which was attributable to the market entry costs. The Joint Applicants are most aggrieved by this order of refund and attack it as unlawful, unauthorized, not permitted, and retroactive rate making. We disagree and affirm, finding that the order of refund was a valid and lawful order of the KCC.

We begin the analysis with an application of logic. The rate permitted by the original KCC order was reversed by this court because it was based, in part, on costs the Joint Applicants neither incurred nor acquired. Although the Joint Applicants argued at oral arguments that we did not reverse the rate order, we said in our opinion: "[W]e reverse the orders of the KCC relating to the allowance of market entry costs and remand for additional hearings and findings." 22 Kan. App. 2d at 337. It seems to us logical that the Joint Applicants should be required to refund the improper portion of the rate to its customers. In the world of the judiciary, when an appellate court takes away something bestowed on a litigant by a trial court, the litigant is required to surrender or return any ill-gotten gains. Otherwise, a successful appeal has little meaning. To suggest that a litigant may somehow retain benefits which an appellate court has determined it was not entitled to simply stands the system on its head and defies logic. In our first opinion,

we said: "If the market entry costs were neither incurred nor acquired by the Joint Applicants, *the KCC shall not permit such costs to be added to the Joint Applicants' rate base or recovered by Joint Applicants in any fashion.*" (Emphasis added.) 22 Kan. App. 2d at 339.

Those were strong words, and we meant what we said. If the Joint Applicants are permitted to keep the money they collected under rates which were determined to be illegal, then our order issued on May 14, 1996, has no meaning retroactively. We do not intend to permit the Joint Applicants to void the retroactive application of an order of this court. We affirm the refund as ordered by the KCC. We agree with the KCC when it said:

"The Kansas Court of Appeals set a clear course when finding that market entry costs which are neither incurred nor acquired may not be recovered in a utility's rate base. As the day follows night, the Commission must order a refund of the prior award of market entry costs and accompanying carrying charges. The rates filed November 9, 1995, do not reflect a just and reasonable rate. Furthermore, the appeal placed the award of market entry costs at risk and prevented the Joint Applicants from obtaining a vested right in any market entry costs. Under such facts and circumstances, the Commission has the authority to restore the parties to their position prior to the error and if necessary, order refunds. See *Mid Louisiana Gas Co. v. FERC*, 780 F.2d 1238, 1247 (5th Cir. 1986) (quoting *Tennessee Valley Municipal Gas Ass'n v. FPC*, 470 F.2d 446, 452 [D.C. Cir. 1972] ["Petitioner must be put in the same position that it would have occupied had the (FERC Commission) error not been made."]).

The Joint Applicants argue that to allow the refund order is impermissible as retroactive rate making. They argue they charged valid rates authorized by the KCC and that our order of reversal can operate only prospectively.

We are cited to the cases of *Kansas Gas & Electric Co. v. Kansas Corp. Comm'n*, 14 Kan. App. 2d 527, 794 P.2d 1165, *rev. denied* 247 Kan. 704 (1990), and *Sunflower Pipeline Co. v. Kansas Corporation Commission*, 5 Kan. App. 2d 715, 624 P.2d 466, *rev. denied* 229 Kan. 671 (1981). In those cases, refunds were approved where the actions of the utilities were found to be wrongful. The Joint Applicants seize this fact to conclude that a refund is only authorized where a utility does something wrong. In this case, they

say they only charged a rate they were required to charge by the KCC and that they did not act wrongfully. We do not agree.

The Joint Applicants simply have not focused on the real issue. The real issue is whether the rate authorized by the KCC was final or whether finality should only be obtained after appellate review was completed. We adopt the latter premise and hold that appellate review is part and parcel of the rate-making process. A rate authorized does not become final until the appellate process has run its course. Until that time, a utility charges the rate with an inherent risk of refund if it is reversed.

"A decision of the lower court is not a final decision until the period for appeal has run and the case has not been appealed or the case has been appealed and finally adjudicated." *Osborn v. Electric Corp. of Kansas City*, 23 Kan. App. 2d 868, Syl. ¶ 5, 936 P.2d 297 (1997). We adopt the same rule for orders of the KCC. We hold that a decision of the KCC establishing a rate or otherwise is not a final decision until the period for appeal has run and the case has not been appealed or, if the case has been appealed, until the case is finally adjudicated.

Our decision means that appellate review is part of the rate-making procedure. Until that procedure has run its course, no rate can be final. It cannot be retroactive rate making to order the refund of a rate which, although not final, has nonetheless been collected. We offer by way of further explanation the decision of *State ex rel. Utilities Comm. v. Conservation Council*, 312 N.C. 59, 67, 320 S.E.2d 679 (1984), in which the North Carolina court said:

" '[R]etroactive rate making occurs when . . . the utility is required to refund revenues collected, pursuant to the then lawfully established rates, for such past use.' [Citation omitted.] The key phrase here is 'lawfully established rates.' A rate has not been lawfully established simply because the Commission has ordered it. If the Commission makes an error of law in its order from which there is a timely appeal the rates put into effect by that order have not been 'lawfully established' until the appellate courts have made a final ruling on the matter."

That same court elaborated further in *State ex rel. Utilities Comm. v. Nantahala Power & Light Co.*, 313 N.C. 614, 741-42, 332 S.E.2d 397 (1985):

"[I]t is elementary that the Commission's approval of any rate is always subject to judicial review. It is equally well-settled that rates or charges fixed by an order of the Commission are to be considered just and reasonable unless and until they are changed or modified on appeal or by the further action of the Commission itself. [Citations omitted.] . . . [When rates were determined excessive on remand], rate payers became entitled to recover *all* overcharges collected pursuant thereto. . . .

"The premise underlying such a refund obligation is that rates which are found to be excessive are then *considered* to have been illegal from the outset, and are not considered to have become illegal only as of the date on which the appellate court has found them to be so. [Citation omitted.] . . . [It is] well within the Commission's inherent authority to order a public utility to refund monies which were overcollected from its customers under excessive and unlawful rates. [Citations omitted.]"

At oral argument, the Joint Applicants argued that since the KCC's decision was not stayed, they were free to collect the rates authorized without fear of a refund in the event of a reversal. We do not agree.

In general, it should require no citation of authority to observe that a stay order only postpones the effectiveness of any order or decree. It does not make that order or decree invulnerable from reversal on appeal. A successful party might very well collect the benefits of a successful judgment whose effect was not stayed, but if that judgment is reversed, the party will be required to return the benefits so obtained. Any argument that a party is entitled to retain the benefits because the other side did not stay the effect of the judgment will not be successful.

There is nothing in the statutes cited by the Joint Applicants, K.S.A. 66-118g and K.S.A. 1996 Supp. 66-118h, that requires a KCC order be stayed as part of the appeals process. The position of the Joint Applicants would place the KCC in the position of being required to stay its own orders in order to protect the appellate process. While we agree that it is possible to stay an order of the KCC, such action is not required. The failure to obtain such a stay does not mean that a party may retain benefits as a result of a KCC order which is reversed on appeal.

K.S.A. 66-118g and K.S.A. 1996 Supp. 66-118h provide a procedure whereby an order may be stayed. They do not mandate that

no refund can be ordered if a rate is reversed on appeal and no stay was issued. The Joint Applicants' argument is that reversal of a rate order may only operate prospectively unless the order was stayed. Such a proposition would, in this case, allow the Joint Applicants to retain the benefits of an unlawful rate to the detriment of the public. That is not a tolerable option.

The relevant statutes make it clear that a utility bears the risk of loss when it charges a rate which is not final. For instance, K.S.A. 66-118g(b) provides:

> "*If the court of appeals does not issue a final order within 120 days after the filing with the clerk of the court of appeals of an application for judicial review of an order or decision of the commission in a public utility rate case, the court of appeals shall automatically stay the order or decision of the commission,* to the extent provided in this subsection, when such stay is requested by motion of a public utility that is a party to the action. The commission's order or decision shall be stayed only to the extent that the commission did not grant the amount that is being contested by the public utility on appeal. The public utility may collect, pursuant to K.S.A. 66-118h and amendments thereto, rates up to but not exceeding the amount that is being contested by the public utility on appeal. The provisions of K.S.A. 66-118h through 66-118k and amendments thereto, shall be applicable to orders or decisions stayed pursuant to this section." (Emphasis added.)

As we read this particular statute, an order of the KCC is not final until the expiration of 120 days from the date an application for judicial review is filed. If our decision has not been made within that time frame, we are required to issue an *automatic stay*. This appears to us to place the risk of reversal squarely on the public utility, which was charging a rate which is not final, for the first 120 days.

K.S.A. 66-118*l* provides:

> "All orders or decisions of the commission shall become operative and effective 30 days after the service of the order or decision as provided by law, except that if a petition for reconsideration is filed, the order or decision shall become operative and effective 30 days after the order or decision of the commission denying the petition or if the petition be granted the order or decision as originally entered or as modified shall become operative and effective 30 days after the service of the order or decision of the commission on reconsideration. *After the lapse of the time period in which judicial review of such order may be taken, such determinations and orders shall be held to be conclusive as to the matters involved in any*

*suit to enforce such order or in any collateral suit or proceedings."* (Emphasis added.)

This statute provides that a KCC order may not be held to be *conclusive* until *after the lapse of time in which judicial review may be taken.* This is a clear statement that an order which is appealed is neither final nor conclusive until the appellate process is completed. We note that a stay is not required to trigger the application of 66-118*l*.

K.S.A. 66-1,206(b) provides:

"All orders and decisions of the commission whereby any rates, joint rates, tolls, charges, rules, regulations, classifications, schedules, practice or acts relating to any service performed or to be performed by any natural gas public utility for the public are altered, changed, modified, fixed or established shall be reduced to writing, and a copy thereof, duly certified, shall be served on the natural gas public utility affected thereby. Such order and decision shall become operative and effective within 30 days after such service. Such natural gas public utility, *unless an action is commenced in a court of proper jurisdiction to set aside the findings, orders and decisions of the commission, or to review and correct the same*, shall carry the provisions of such order into effect." (Emphasis added.)

As we read this statute, an order of the KCC whereby any rates are "fixed or established" shall take effect within 30 days after service. The public utility is authorized to carry the order into effect *unless*, among other things, a petition for review is filed. See K.S.A. 66-118k.

The appellate process is part of the rate-making process. A rate is not final until that process has been completed. The risk of loss in placing such a rate into effect is squarely on the public utility. Further, a refund may be ordered regardless of whether a stay order is sought or issued.

We affirm the decision of the KCC ordering a remand of that portion of the rate attributable to the market entry costs which should never have become part of the rate base.

## CONSTITUTIONAL RIGHTS

The Joint Applicants argue they were denied due process of law because the KCC refused to allow them to present evidence on remand. We do not agree.

We simply point out that the Joint Applicants have had due process to the extent of assisting to build a record of 17,364 pages. It appears to us from that alone that they certainly were afforded their constitutional right to appear and be heard.

The Joint Applicants suggest that the KCC order requiring a refund is confiscatory and that the KCC is taking the Joint Applicants' property without just compensation. The flaw in this argument is perfectly apparent. The rate in this case was not final when the KCC originally entered it because an appeal was taken from that order. In addition, the Joint Applicants failed to cite authority to support their argument in this regard.

The final argument insofar as constitutional rights are concerned is that the Joint Applicants believed the KCC's order was unconstitutional because it did not take their financial integrity into account. We agree that pursuant to *Sunflower Pipeline Company v. Kansas Corporation Commission*, 5 Kan. App. 2d 715, the KCC should consider the effect of the refund on the financial integrity of the public utility.

However, the fact is, the KCC did consider the financial integrity of the Joint Applicants when it said:

"The Commission has determined that the market entry costs at issue were neither incurred nor acquired . . . . Under such facts and circumstances, the customer interest in not having to pay the alleged market entry costs outweighs the interest of the Joint Applicants' investors. When balancing the investor and customers' interest, the record does not demonstrate that the Joint Applicants are entitled to recover costs that were neither incurred nor acquired. The financial integrity of the Joint Applicants should be based upon costs either incurred or acquired. Otherwise, the customers would be burdened beyond rates based upon a reasonable cost of service including a reasonable return on the rate base."

We hold that the constitutional arguments advanced by the Joint Applicants are without merit.

## VACATION OF ORDER

Finally, the Joint Applicants argue that the KCC was required to grant their motion to vacate certain orders and to issue an order finding that the schedule attached to the application filed March 25, 1994, was deemed approved by operation of law. This argument is based on our decision in *Kansas Pipeline Partnership v. Kansas*

*Corporation Comm'n,* 22 Kan. App. 2d 410, 916 P.2d 76, *rev. denied* 260 Kan. 994 (1996), *cert. denied* 519 U.S. 1092 and 519 U.S. 1115. (1997).

In essence, the Joint Applicants are arguing that all the 1994 and 1995 orders entered in the original rate hearing should be vacated because they were not entered within the 240-day time period beginning March 25, 1994. K.S.A. 1996 Supp. 66-117(b) requires the KCC's action to be completed in 240 days unless the 240-day period was extended pursuant to the statute's provisions. The Joint Applicants argue that this statute was violated.

We conclude the argument is without merit. The 240-day period in question was extended following extensive "rebuttal testimony" filed by the Joint Applicants, which materially altered the factual and legal bases underlying the March 25, 1994, application. Several parties filed motions to have the "rebuttal testimony" deemed a new application which would restart the 240-day period. The KCC agreed that the new testimony was, in effect, an amendment to the Joint Applicants' application and that it restarted the 240-day period. We conclude this action by the KCC was proper under the provisions of K.S.A. 1996 Supp. 66-117(b)(1).

Moreover, in the final analysis, we conclude the Joint Applicants are in no position to raise this particular issue on appeal. In order to appeal an issue cited in a KCC order, a litigant must have filed and pursued a timely request for reconsideration of the order in question. The Joint Applicants did neither. As pointed out, the KCC decided to restart the 240-day time period. No request for a reconsideration of that decision was filed, and no objection to that decision may be pursued on appeal. See K.S.A. 1996 Supp. 77-529. In addition, this is an issue which originated prior to and was in existence at the time the original appeal was heard in this case. The Joint Applicants did not raise this issue on the first appeal and cannot do so now.

Affirmed.