(624 P.2d 466)
No. 51,260

SUNFLOWER PIPELINE COMPANY, *Appellant,* v. THE STATE CORPORA-
TION COMMISSION OF THE STATE OF KANSAS, *Appellee.*
Petition for review denied April 29, 1981.

Opinion filed March 6, 1981.

*Robert J. O'Connor,* of Hershberger, Patterson, Jones & Roth, of Wichita, for appellant.

*Donald A. Low,* assistant general counsel, of Topeka, for appellee.

Before MEYER, P.J., ABBOTT and SWINEHART, JJ.

MEYER, J.: This is an appeal from the Finney County District Court's affirmance of a Kansas Corporation Commission order requiring Sunflower Pipeline Company to make full refunds to certain of its irrigation gas customers.

The facts are undisputed. Sunflower Pipeline Company (Sunflower) sells irrigation gas to approximately 35 farmers in Finney and Scott Counties, Kansas. The rate on file and approved by the Kansas Corporation Commission (KCC) for that service from mid-1976 to 1978 was 25¢ per Mcf. Effective August 1, 1976, Sunflower's previous management implemented a limited 65¢ per Mcf rate for its irrigation service. In doing so, Sunflower entered into contract rates of 65¢ per Mcf with all of its customers who were willing to sign said contract. Sunflower did not file this contract with the KCC, however, nor did it apply for an increase in rates.

At the time the private contracts were negotiated, the average gas cost to the utility was 35.64¢ per Mcf. By November 1, 1977, the cost of gas escalated to 52.69¢ per Mcf. Effective April 1, 1978, the cost of gas increased to 54.59¢ per Mcf.

In response to a complaint from one of the customers being charged 65¢ per Mcf, the KCC issued an order to Sunflower to show cause why it should not be ordered to make refunds to customers for any unauthorized rates or charges collected. After a hearing, the commission made findings of fact and conclusions of law. The commission concluded that Sunflower had failed to conform with the provisions of K.S.A. 66-117 in that it did not file for changes in its charges with the commission. Sunflower was, therefore, directed to refund to all retail customers the amount actually received by Sunflower over the previously approved rate of 25¢ per Mcf plus interest at eight percent per annum. Such refunds were to be made by Sunflower for its excess charges up to the effective date of new gas rates which were approved August 25, 1978, at 76.26¢ per Mcf and effective for billings after November 1, 1978. See *Sunflower Pipeline Co. v. Kansas Corporation Commission,* 3 Kan. App. 2d 683, 600 P.2d 794 (1979). The accounting by Sunflower indicated the refunds totalled $136,375.00. The order indicated the refunds should be credited to customers over a two-year period. After a motion for rehearing was denied by the KCC, Sunflower appealed to the Finney County District Court, which approved the order. Sunflower now brings this appeal to this court.

Sunflower claims the KCC order of refunds was unreasonable in that the making of such refunds would impair Sunflower's capital structure.

Sunflower alleges that by the end of the fifteenth month of the reparation period, it will have accumulated a $27,000 cash flow deficit, thus lacking by some $60,000 the working capital necessary to remain viable. (The company claims an annual need for approximately $30,000 working capital to remain viable.)

Sunflower further argues that the 25¢ per Mcf was an unreasonable charge at the time the contracts in question were entered into, since the KCC in a later rate hearing using a 1976 test year determined a reasonable rate to be 76.26¢ per Mcf. The mere cost of gas to Sunflower, not counting other expenses, was 35.64¢ per Mcf in 1976 at the time the private contracts were entered into. According to Sunflower, the price was so low that the services were rendered to irrigators at a net loss of $26,000, after taxes, over the 24-month period ending July 31, 1978.

Sunflower raised its contention concerning the economic impact on its capital structure in a motion for rehearing. The KCC summarily disposed of the motion for rehearing without making any additional findings of fact or conclusions of law. We must assume the KCC determined that the reasons set out in its first journal entry were sufficient even in light of the consequences of making the refunds alleged by Sunflower. The district court concluded that the commission did not have discretion to order less than full refunds in view of the statutory violations committed by Sunflower.

The recent case of *Midwest Gas Users Ass'n v. Kansas Corporation Commission,* 3 Kan. App. 2d 376, 380-81, 595 P.2d 735, *rev. denied* 226 Kan. 792 (1979), thoroughly outlines the scope of judicial review of KCC orders.

"K.S.A. 1978 Supp. 66-118d limits judicial review of an order by the commission to determining whether the order is 'lawful' or 'reasonable.' *Kansas Gas & Electric Co. v. State Corporation Commission,* 218 Kan. 670, Syl. ¶ 1, 544 P.2d 1396 (1976). A court has no power to set aside such an order unless it finds that the commission acted unlawfully or unreasonably. *Jones v. Kansas Gas and Electric Co.,* 222 Kan. 390, 396-7, 565 P.2d 597 (1977). An order is 'lawful' if it is within the statutory authority of the commission, and if the prescribed statutory and procedural rules are followed in making the order. *Central Kansas Power Co. v. State Corporation Commission,* 221 Kan. 505, Syl. ¶ 1, 561 P.2d 779 (1977). An order is generally considered 'reasonable' if it is based on substantial competent evidence. *Jones v. Kansas Gas and Electric Co.,* 222 Kan. 390, Syl. ¶ 2.

"The legislature has vested the commission with wide discretion and its findings have a presumption of validity on review. *Central Kansas Power Co. v. State Corporation Commission,* 221 Kan. at 511. Since discretionary authority has been delegated to the commission, not to the courts, the power of review does not give the courts authority to substitute their judgment for that of the commission. *Central Kansas Power Co. v. State Corporation Commission,* 206 Kan. 670, 675, 482 P.2d 1 (1971). The commission's decisions involve the difficult problems of policy, accounting, economics and other special knowledge that go into fixing utility rates. It is aided by a staff of assistants with experience as statisticians, accountants and engineers, while courts have no comparable facilities for making the necessary determinations. *Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 48-9, 386 P.2d 515 (1963)."

It is not disputed that Sunflower failed to file with the commission the new contracts providing for a charge of 65¢ per Mcf, and charged the customers at a contract rate over and above the filed schedule of rates.

Kansas Statutes Annotated citations in this opinion refer to Volume 5 [Ensley 1980].

K.S.A. 66-107 requires each public utility governed by the act to establish just and reasonable rates. K.S.A. 66-108 requires the utility to file with the commission schedules of rates charged, and all contracts between utilities pertaining to any and all services rendered. K.S.A. 66-109, as set out in part below, prohibits charging rates greater or less than those shown by such schedules:

"No common carrier or public utility governed by the provisions of this act shall, knowingly or willfully, charge, demand, collect or receive a greater or less compensation for the same class of service performed by it within the state, or for any service in connection therewith, than is specified in the printed schedules or classifications, including schedules of joint rates  .  .  .  .   *Provided,* That rates different from those specified in the printed schedule or classification of rates may be charged by any public utility, street or interurban railway, by agreement with the customer, in cases of charity, emergency, festivity or public entertainment  .  .  .  ."

In *Mollohan v. Railway Co.,* 97 Kan. 51, 154 Pac. 248 (1916), a special contract granting a privilege contrary to regular rates published and filed with the public utilities commission was held to be in violation of the utilities act, and therefore, void and illegal.

In *Kansas Electric Power Co. v. Thomas,* 123 Kan. 321, 255 Pac. 33 (1927), it was held that the lawful rate must be collected regardless of any error. The utility could not contract for a lesser rate than those published and filed with the commission. The

utility was thus entitled to collect the full amount of a charge despite erroneous billing for less than the published rate.

Sunflower argues that it was in an emergency situation, justifying their contracting for a higher rate under the proviso of K.S.A. 66-109.

The proper response for a utility faced with net losses is to apply to the commission for a rate increase. The circumstances of this case do not present the type of emergency contemplated by the statute.

K.S.A. 66-117 provides for the methods for making a change in an existing rate:

"(a) Unless the state corporation commission otherwise orders, no common carrier or public utility over which the commission has control shall make effective any changed rate, joint rate, toll, charge or classification or schedule of charges, or any rule or regulation or practice pertaining to the service or rates of such public utility or common carrier except by filing the same with the commission at least thirty (30) days prior to the proposed effective date thereof . . . .
. . . .
"(c) Except as provided in subsection (b), *no change shall be made in any rate,* toll, charge or classification or schedule of charges, joint rates, or in any rule or regulation or practice pertaining to the service or rates of any such public utility or common carrier, *without the consent of the commission* . . . ." (Emphasis added.)

From the above, it is clear that Sunflower entered into contracts which were in violation of both K.S.A. 66-109 and K.S.A. 66-117. It charged customers at a rate in excess of the filed schedules without going through the proper procedures to change said rate. There is no statute expressly granting the KCC power to order refunds, nor is there case law which expressly determines whether such power exists.

The power of the KCC to order refunds for overcharges in violation of the act is implied from K.S.A. 66-101, which grants the state corporation commission "full power, authority and jurisdiction to supervise and control the public utilities . . . doing business in the state" and "to do all things necessary and convenient for the exercise of such power, authority and jurisdiction."

K.S.A. 66-141 states:

"The provisions of this act and all grants of power, authority and jurisdiction herein made to the commissioners, shall be liberally construed, and all incidental powers necessary to carry into effect the provisions of this act are hereby expressly granted to and conferred upon the commissioners."

We conclude the KCC has power to order refunds for charges in excess of published rates.

Given that the commission has the power to order refunds of overcharges as a means of enforcing its power to regulate rates, the question is whether that power is limited and under what circumstances the power may be exercised.

In *Chicago, M., St. P. & P. R. Co. v. Alouette Peat Products,* 253 F.2d 449 (9th Cir. 1957), the full amount of charges gained under an illegal rate increase was restored, even though the increase was ruled to be just and reasonable by the commission. In *Alouette,* the change in rate was filed in violation of Paragraph 3 of Section 6 of the Interstate Commerce Act:

"No change shall be made in the rates, fares, and charges . . . which have been filed and published by any common carrier in compliance with the requirements of this section, except after thirty days' notice to the commission and to the public published as aforesaid . . . ." 253 F.2d at 453.

The increase in rates was made on less than 30 days' notice in violation of the statute.

The Court of Appeals for the Ninth Circuit approved the award of a refund of the full amount collected over and above the rate established prior to the illegal increase. The court noted the increase "had not been, at the time the shipments in question were made, established as the legal rate in the manner provided by law. The Court is without authority to establish rates. [Citation omitted.] A rate once fixed remains established until changed in some manner allowed by law. [Citations omitted.] No change having been legally made in the rate which existed before . . . that rate was the only existing, legally established rate and the Court was bound to apply it. [Citation omitted.]" 253 F.2d at 456.

In *Socony Mobil Oil Company v. Brooklyn Union Gas Company,* 299 F.2d 692 (5th Cir. 1962), distributors were able to recover all monies paid in excess of the last effective filed rate schedule, where the charges were collected under a new rate schedule which had not been filed with the commission.

"[T]he contract rates in effect . . . were the only lawful rates which could be collected until changed by filing the proposed changes with the Federal Power Commission as required by statute. Any rate changes provided for in the contract . . . constitute rate changes under the Natural Gas Act and are forbidden in the absence of compliance with the filing provisions of the Act and the regulations of the Commission." 299 F.2d at 694.

We conclude that a full refund should be ordered when charges are not made pursuant to a rate legal at the time of the charge, regardless of whether the legal rate is unreasonably low.

Sunflower next contends that where payments are voluntarily made, the KCC is prevented from ordering refunds.

Sunflower argues that the irrigators should not be entitled to recover the amounts paid on said contracts because said payments were voluntarily made. According to Sunflower, the irrigators were not told that their irrigation gas would be cut off if they did not sign the contracts. They were simply asked to sign the contracts, and did so voluntarily. Testimony from one of the irrigators, Mr. Sterling, was that he had asked the employee who negotiated the private contracts, what they would do if the irrigators didn't pay and the employee replied, ". . . I guess we would have to discontinue the use of the gas . . . ." Another irrigator, Mr. Cheney, testified that the implication was that he wouldn't get gas service if he didn't sign the new contract. The KCC concluded that the fact that payments were voluntarily made was irrelevant.

Sunflower argues voluntary payment on the basis of the following law:

"It is elementary that the law does not recognize privilege to pay an illegal demand and then to sue for the money. It is only when, in an emergency for which he is not responsible, a person finds he has no choice except to pay in order to protect his business interests, that he may recover." *Milling Co. v. Gas & Electric Co.,* 115 Kan. 712, 721, 225 Pac. 86 (1924).

In *Milling Co.,* the test of whether the constraint was sufficient to destroy free agency to pay or not to pay according to one's own will was applied to find that some payments had been involuntarily made. In that case, it was noted that if plaintiff flatly refused to meet the demand, the defendant utility might discontinue service which would result in disaster to the milling company. Defendant utility had begun charging a rate in excess of what its contract had called for. These payments were found to be made under duress and were recoverable by plaintiff. There were other payments which were held to be voluntary payments. These payments were made only after considerable negotiation and after a full year of antagonism between the parties respecting the rate. It was stated: "An unjust or illegal demand must be resisted at the threshold, because payment under protest may not be

employed by way of strategy in dealing with an adversary." 115 Kan. at 722. Whether the payments were voluntary in the case at bar is a question of fact that was not decided by the KCC, but such determination is not necessary herein because the right of the KCC to order refunds is not shown by Sunflower to be derivative from the rights of the irrigators. Rather, the right is derived from the implied power to enforce rate orders. The KCC would have power to make such orders of refunds regardless of whether the irrigators would be able to bring such an action in their own right.

Sunflower argues strenuously that less than full restitution should be ordered herein, and cites a number of cases where courts have held that the amount of restitution should be decided on the basis of what was equitable, just and reasonable under all the circumstances. The difficulty with the cases cited by Sunflower, however, is that those cases deal either with interim orders or with regular orders of a regulatory agency which were later found to be unlawful on procedural grounds. Such is not the case herein.

In the instant case, the utility took no steps whatever, formal or informal, to apply to the KCC for permission to charge the higher rates until applying for the increased rates which gave rise to *Sunflower Pipeline Co. v. Kansas Corporation Commission,* 3 Kan. App. 2d 683. Instead, Sunflower, without KCC approval, entered into the contracts for 65¢ per Mcf hereinabove referred to with knowledge that the authorized rate was only 25¢ per Mcf. We emphasize that we are not dealing with a situation which involves a previous order of the corporation commission, whether interim or regular in nature, other than the last approved rate established by the commission of 25¢ per Mcf.

We conclude that K.S.A. 66-109 does not allow deviation from approved rates without filing with the KCC. Furthermore, partial refunds would amount to retroactive ratemaking by the commission. Sunflower, having previously failed to properly invoke commission jurisdiction to approve new rates, would have had the commission approve of new rates retrospectively by allowing Sunflower to retain some or all of the excess charges. Also, since we conclude the contracts for 65¢ per Mcf were void as against public policy, any less than a full restitution to the user-contractors would be depriving them of their property (that portion of the

restitution of less than 40¢ per Mcf), without due process of law. This is because any restitution ordered in an amount less than 40¢ per Mcf would be depriving them of property to the extent that they paid at an illegal rate in excess of 25¢ per Mcf.

As the court noted in *State, ex rel., v. Public Service Comm.,* 135 Kan. 491, 500, 11 P.2d 999 (1932):

" 'If an act, whether general or special, public or private, operates retrospectively to take what is, by existing law, the property of one man, and, without his consent, transfer it to another, it is in violation of the guaranty of due process of law.' " (Citing from Myer on Vested Rights, p. 19, n. 33 [1891].)

Sunflower also complains that the KCC orders were not supported by adequate findings and conclusions as required by law. The most notable example we find from the record is the absence of any KCC findings or conclusions whatever as to what effect the order of restitution had with regard to a possible insolvency of the utility. While, as we have said, we conclude the KCC was correct in regard to its order of full restitution, we do believe the commission should have considered the effect on the utility in determining that restitution be repaid *within two years.* Thus, while we affirm the KCC order insofar as requiring full restitution is concerned, we remand this case to the district court with instructions that that court remand the same to the KCC for findings and conclusions relative to the effect such restitution will have on the utility's ability to carry on its operations and service to its customers. The KCC should consider the effect the speed of repayment will have on the continuing ability of the utility to render its services, and whether same can be maintained with the two-year repayment, or whether an additional year or years should be added within which the utility must make restitution.

Affirmed in part and remanded with instructions.