(3 P.3d 86)

No. 82,800

JOE AUTEN and PAUL MCMAHON, *Appellants*, v. KANSAS COR-
PORATION COMMISSION, and SOUTHWESTERN BELL TELEPHONE
COMPANY, *Appellees*.

Opinion filed
March 24, 2000.

*B. Joyce Yeager*, of Yeager Law Firm, L.L.C., of Leawood, *Andrew Marquardt*,
of The Marquardt Law Firm, P.A., of Lenexa, and *Michael Hodges*, of The Law
Office of Michael L. Hodges, of Lenexa, for appellants.

*Robert L. Lehr* and *Eva Powers*, assistants general counsel, and *Glenda L.
Cafer*, general counsel, for appellee Kansas Corporation Commission.

*Bruce A. Ney* and *Kristin J. Blomquist*, for appellee Southwestern Bell Tele-
phone Company.

Before KNUDSON, P.J., PIERRON, J., and VAN HAMPTON, District
Judge, assigned.

PIERRON, J.: The appellants, Joe Auten and Paul McMahon,
appeal a decision of the district court, affirming the Kansas Cor-
poration Commission's (KCC) dismissal of their claim against
Southwestern Bell Telephone Company (Bell). The appellants ar-

gue the KCC and the district court erred in finding that Bell was not in violation of K.S.A. 66-109 when Bell's pay telephones would not make change for amounts received in excess of 35¢ for a local phone call.

The facts in this case are straightforward and undisputed. The appellants filed a two-count class action in Wyandotte County District Court arguing that Bell had violated 66-109 by charging, demanding, collecting, or receiving an amount greater than the 35¢ charge for pay telephone calls authorized by the KCC. The court dismissed the case for lack of jurisdiction.

The appellants then filed a petition with the KCC alleging the same complaint. Bell filed a motion to dismiss. In granting the motion, the KCC held that Bell did not knowingly or willfully charge, demand, collect, or receive compensation for calls at its pay telephones in excess of the authorized 35¢. The KCC found that the cards affixed to the pay telephones advised the user that no change would be given. Therefore, Bell did not knowingly or willfully charge or demand a greater amount than authorized by the KCC. The KCC also found Bell did not collect or receive a greater amount than the lawful 35¢ amount because 66-109 was not intended to regulate the activity of collecting the coins from a pay telephone or of receiving a greater amount than the lawful rate which was placed into the coin telephone voluntarily by a consumer. The KCC stated Bell has no control over how much change a consumer has in his or her pocket or how much of that change above 35¢ is put into a pay telephone.

The appellants appealed to the Shawnee County District Court. The court agreed with Bell for the same reasons stated by the KCC and affirmed the dismissal of the case. The court found the KCC's interpretation of 66-109 was entirely reasonable and the court would not usurp the power of the KCC. The court stated that any amounts in excess of the lawful rate in 66-109 were due to the voluntary actions of the consumer based on the evidence that the warnings of no change were affixed to the pay telephones and that no one forced a consumer to put more than 35¢ in the pay telephone to make a call.

The scope of appellate review of an administrative agency's order is to determine whether the district court reviewed the order in accordance with its statutory responsibility. *Mobil Exploration & Producing U.S. Inc. v. Kansas Corporation Comm'n*, 258 Kan. 796, 808, 908 P.2d 1276 (1995). This court exercises the same review of the agency's action as does the district court and under K.S.A. 77-621(c)(4) of the Act for Judicial Review and Civil Enforcement of Agency Actions, we examine whether the KCC has erroneously interpreted or applied the law. *Farmland Industries, Inc. v. Kansas Corp. Comm'n*, 25 Kan. App. 2d 849, 851, 971 P.2d 1213 (1999).

The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference and is called the doctrine of operative construction. *In re Appeal of Topeka SMSA Ltd. Partnership*, 260 Kan. 154, 162, 917 P.2d 827 (1996). Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. Such interpretation may, in fact, be entitled to a controlling significance in judicial proceedings. If there is a rational basis for the agency's interpretation, it should generally be upheld on judicial review. See *In re Application of Zivanovic*, 261 Kan. 191, 193, 929 P.2d 1377 (1996).

Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. *Topeka SMSA*, 260 Kan. at 162.

The issue presented is whether the KCC's interpretation of 66-109 is reasonable and should be upheld on appeal. K.S.A. 66-109 provides in relevant part:

"No common carrier or public utility governed by the provisions of this act shall, knowingly or willfully, charge, demand, collect or receive a greater or less compensation for the same class of service performed by it within the state, or for any service in connection therewith, than is specified in the printed schedules or classifications. . . ."

K.S.A. 66-109 prohibits public utilities from charging customers amounts different than published rates. See *Sunflower Pipeline Co.*

*v. Kansas Corporation Comm'n*, 5 Kan. App. 2d 715, 718, 624 P.2d 466, *rev. denied* 229 Kan. 671 (1981). Bell has clearly not charged or demanded an excessive rate. Bell's pay telephones indicate the legal rate of 35¢ for a local call and have warnings that no change will be given for amounts in excess of 35¢.

The question of whether Bell has knowingly and willfully collected or received a rate greater than authorized by the KCC is not as easily resolved. We have examined the case law cited by the appellants in support of their argument. Two of those cases are worthy of comment. *Kansas Pipeline Partnership v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 42, 56-57, 941 P.2d 390 (1997), is presented for authority that it is irrelevant whether Bell had active or passive intent in receiving amounts greater than the legal rate. However, *Kansas Pipeline* involved a utility's collection of an unfinalized rate that was determined to be illegal by the appellate courts. The court stated that until the rate had become final, "a utility charges the rate with an inherent risk of refund if it is reversed." 24 Kan. App. 2d at 57. Here, Bell has not charged an unfinalized rate.

The appellants also rely on *Sunflower Pipeline Co.*, 5 Kan. App. 2d 715, for authority that the courts have rejected arguments that voluntary overpayments in violation of a legal rate are permitted. In *Sunflower*, a pipeline utility contracted with its customers for gas at a rate of 40¢ per mcf higher than the legal rate of 25¢ per mcf established by the KCC. The pipeline utility argued that since the customers voluntarily entered into the contract and paid the rate, no refund should be given. The court disagreed and held the KCC had the power to order refunds regardless of whether the customers could bring an action in their own right. 5 Kan. App. 2d at 722. In the present case, we do not have the act of charging and collecting of an excessive rate.

When a customer puts two quarters in a Bell pay telephone to make a local call, Bell has collected and received money in excess of the 35¢ legal rate since no change is given. However, the acceptance of that money does not violate K.S.A. 66-109. We agree with the KCC's interpretation of 66-109:

"The Commission has regulatory authority over telecommunications public utilities (K.S.A. 66-1,188), not over the consumers that use their services. It is clear that the Legislature intended to prohibit the **affirmative** action of a telecommunications public utility from charging, and receiving because of that charge, an amount greater than authorized by the Commission, not the passive activity of collecting the coins from a pay telephone or receiving a greater amount than the lawful rate placed into the coin telephone voluntarily by a consumer. SWBT has no control over what change a consumer may have in her pocket or how much of that change above the 35¢ charge that she may choose to place into the coin telephone. Complainants' construction of K.S.A. 66-109 would lead to the absurd result that SWBT violates the law because of the voluntary actions of another party. The Commission concludes, therefore, that SWBT does not violate K.S.A. 66-109 by the mere fact of collecting or receiving the coins placed into its coin telephones by users who choose to place change into those telephones in excess of 35¢."

The issues involved here are the kinds traditionally left to bodies such as the KCC. Inherent in the decision were questions concerning the significance of the "windfall" on the public and the cost (which would eventually be borne by the public) of converting telephones to make change. We note there is little or nothing in the record developed by the appellants dealing with these underlying issues which could help determine a reasonable interpretation of the statute involved. Absent a showing that the KCC acted inappropriately in arriving at the interpretation it did, the court will defer to its presumed expertise.

Affirmed.