(30 P.3d 1033)
No. 85,298 [1]

MARTHA CASTRO, *Appellee*, v. IBP, INC., *Appellant*.

Opinion filed May 4, 2001.

*Douglas M. Greenwald* and *Gregory D. Worth*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellant.

*C. Albert Herdoiza*, of Kansas City, for appellee.

Before RULON, C.J., KNUDSON, J., and WAHL, S.J.

WAHL, J.: IBP, Inc., appeals the decision of the Workers Compensation Board (Board) finding an expert's opinion admissible and

awarding Martha Castro a sum for permanent partial general disability.

The appellant argues that the Board improperly interpreted K.S.A. 1999 Supp. 44-510(c)(2). Interpretation of a statute is a question of law which this court can review de novo. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. *Auten v. Kansas Corp. Comm'n*, 27 Kan. App. 2d 252, 254, 3 P.3d 86, *rev. denied* 269 Kan. 931 (2000). When the agency is one of special competence and experience, its interpretation of a statute may be entitled to controlling significance. If there is a rational basis for the agency's interpretation, it should be upheld on judicial review. *In re Application of Zivanovic*, 261 Kan. 191, 193, 929 P.2d 1377 (1996). Ultimately, however, the court must exercise de novo review.

The primary dispute is whether Castro violated K.S.A. 1999 Supp. 44-510(c)(2) when she obtained a follow-up, self-paid, functional impairment opinion from the same physician IBP previously paid $500 to examine and diagnose her condition. If Castro violated the statute, then any opinion rendered by Dr. Prostic would be inadmissible in the claim proceedings. The statute provides:

"(2) Without application or approval, an employee may consult a health care provider of the employee's choice for the purpose of examination, diagnosis or treatment, but the employer shall only be liable for the fees and charges of such health care provider up to a total amount of $500. The *amount* allowed for such examination, diagnosis or treatment shall not be used to obtain a functional impairment rating. Any medical opinion in violation of this prohibition shall not be admissible in any claim proceedings under the workers compensation act." (Emphasis added.) K.S.A. 1999 Supp. 44-510(c)(2).

Castro scheduled an appointment with Dr. Prostic for November 6, 1996. The doctor examined Castro and provided an opinion on relevant work restrictions and need for additional medical treatment. The engagement letter from Castro's attorney to Dr. Prostic specifically instructed him not to provide a functional impairment rating.

The total cost of services provided was $535 of which $500 was paid by IBP pursuant to the statutory allowance. The bill itemized a $375 exam and two x-rays. Dr. Prostic issued a report of his findings and testified his sole purpose in meeting with Castro was for an "examination and evaluation and recommendations for treatment."

On March 7, 1997, Castro's attorney contacted Dr. Prostic and requested a functional impairment opinion. Without reexamining Castro, Dr. Prostic issued a separate written functional impairment opinion. The entire cost of $25 was paid by Castro's attorney and not out of the $500 statutory medical allowance. At Dr. Prostic's deposition, Castro did not request Dr. Prostic to express his opinion on functional impairment, and that opinion is not part of the record. Evidence of functional impairment was provided by Dr. Harris, who was appointed by the administrative law judge to provide such a rating.

IBP contends Castro violated the statute because the functional impairment rating obtained at a later date was based on services previously paid for by IBP and this was an abuse by Castro. IBP argues the last two sentences of that statute require that once a functional impairment rating is obtained from the examining physician, the statutory prohibition applies and any medical opinion from this physician is inadmissible.

The Board concluded that Castro did obtain a functional impairment rating from Dr. Prostic, but the rating was not paid for by the $500 medical allowance provided by IBP. The functional impairment rating report was paid for by Castro almost 4 months later and almost 2 months after the administrative law judge appointed Dr. Harris to provide a rating. The Board also concluded that

"[a] claimant, if he or she so desires, may obtain a functional impairment rating from an examining physician and pay for such a rating separately. The claimant can then choose whether or not to enter the functional impairment rating into the record and this would not violate the provisions of K.S.A. 44-510(c)(2)."

The Board's interpretation of the statute is rational. If the statute was meant to be applied as IBP suggests, it would require the

statute to contain additional language that would preclude the "results" of the exam from being subsequently used to obtain an impairment rating. IBP conceded the statute was "technically" complied with, but Castro violated the spirit of the statute. However, it is a legislative, not a judicial, function to rewrite the statute.

We conclude that the more obvious and simple conclusion is that Dr. Prostic did not testify as to the functional impairment of Castro, Dr. Harris did. Dr. Harris was appointed by the administrative law judge and Dr. Prostic's work-task loss opinion was not given in violation of K.S.A. 1999 Supp. 44-510(c)(2).

IBP contends the permanent partial disability benefit based on work disability should be remanded for further findings as to the effect of Castro's refusal of vocational and educational assistance, including her failure to obtain her GED in determining the post-injury wage. The Board found Castro did not look for work in good faith and that she could work 40 hours per week instead of the 22-29 hours she was working. The Board used Castro's then current wage rate of $5.60 per hour and a 40-hour work week to impute a 45% wage loss.

To argue Castro categorically or absolutely rejected IBP's offer of vocational and educational assistance simply misconstrues the record. Castro refused assistance while she was still being treated for her injuries and before she was released at maximum medical improvement. She did indicate she would be agreeable to assistance when the treating physician determined she had reached maximum medical improvement. IBP's vocational expert simply closed his file in August 1995, almost 1 year prior to Castro's release from medical care, and IBP made no further offers of assistance.

The hourly wage rate, though equivalent to Castro's actual wage rate at the time of her deposition, was also an imputed rate. If a claimant fails to make a good faith effort to find employment, a wage will be imputed to the claimant based on what the claimant should be able to earn. *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 320, 944 P.2d 179 (1997). Whether the imputed wage rate of $5.60 per hour is appropriate is really an issue of whether there was substantial competent evidence to support the 45% wage-loss computation.

IBP argues that there was no substantial competent evidence to support the findings of 69% work-task loss or 45% wage loss. In reviewing the Board's orders, the appellate court is required to view the evidence in the light most favorable to the party prevailing below and determine whether the Board's findings are supported by substantial competent evidence. *Woodward v. Beech Aircraft Corp.*, 24 Kan. App. 2d 510, 513, 949 P.2d 1149 (1997). Substantial evidence is that evidence "possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved." *Shields v. J.E. Dunn Constr. Co.*, 24 Kan. App. 2d 382, 385, 946 P.2d 94 (1997).

As to the work-task loss finding of 69%, IBP again argues that Dr. Prostic's opinion was improperly admitted on this issue. We have already concluded that Dr. Prostic's work-task loss opinion was admissible, so there is substantial competent evidence to support the Board's finding of a 69% task loss. This determination was based on Dr. Prostic's opinion which the Board concluded was more persuasive and credible than the 0% task loss opinion of Dr. Hearon.

Concerning the 45% wage loss, the essence of IBP's argument is that there is no substantial competent evidence to support using the $5.60 hourly wage rate. The Board found that Castro did not look for work in good faith and that there is nothing to restrict her from working 40 hours per week. As for the wage rate, the Board used the rate derived by a vocational assessment expert which is uncontroverted in the record. The expert testified that Castro has "basically always done . . . entry level type work" and "get[ting] her GED was not going to significantly improve her ability to access the labor market." The $5.60 wage rate is uncontroverted in the record and, thus, is conclusive. IBP's complaints about Castro's refusal of services and her failure to pursue her GED do not render the evidence improbable, unreasonable, or untrustworthy. See *Overstreet v. Mid-West Conveyor Co., Inc.*, 26 Kan. App. 2d 586, 589, 994 P.2d 639 (1999).

Utilizing the $5.60 wage rate and a 40-hour work week, the Board imputed a post-injury wage of $224 which it compared to the stipulated $411 preinjury wage to arrive at a 45% wage loss. It then applied K.S.A. 1999 Supp. 44-510e and correctly averaged the 45% wage loss with the 69% work-task loss to arrive at a 57% work disability. Since both the wage loss and the work-task loss figures are supported by substantial competent evidence, the Board's decision is affirmed.

Affirmed.

KNUDSON, J., concurring: I agree we should affirm the Board's order. However, I do not agree with the Board's conclusion Castro or her attorney paid Dr. Prostic for his functional impairment rating. The $25 gratuity is a thinly veiled subterfuge undertaken to avoid the proscription of K.S.A. 1999 Supp. 44-510(c)(2).

I am still able to support the opinion of the majority as I believe "[a]ny medical opinion" as used in the last sentence of K.S.A. 1999 Supp. 44-510(c)(2) can only be interpreted to prohibit admission of an opinion as to the claimant's functional impairment, not any opinions under the canopy of heaven. Any other interpretation, I believe, makes hash of the legal maxim that a statute should be construed to avoid unreasonable results.