(111 P.3d 1068)
No. 92,841

TERESA J. MATHENA, *Appellee*, v. IBP, INC. (NKA TYSON FRESH MEATS, INC.), *Appellant*.

Opinion filed May 27, 2005.

*Douglas M. Greenwald* and *Gregory D. Worth*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellant.

*J. Joseph Seiwert*, of Snider & Seiwert, L.L.C., of Wichita, for the appellee.

Before JOHNSON, P.J., PIERRON, J., and BUKATY, S.J.

PIERRON, J.: IBP, Inc., now known as Tyson Fresh Meats, Inc. (Tyson) appeals the award of work disability given to Teresa J. Mathena resulting from injuries she received while working at Tyson. Tyson argues Mathena should have been compensated using two scheduled injuries, not an award for permanent partial disability, and that she was not entitled to compensations for injuries to her right elbow that were diagnosed after termination of her employment.

Mathena began working for Tyson in 1991. Her job was trimming contamination off cattle carcasses. In this position, Mathena repetitiously sharpened a knife, used a hook, and twisted and reached from the ground level to above her head for up to 8 hours per day in cold temperatures.

Mathena had previously filed workers compensation claims. In 1995, she had anterior acromioplasty and coraco-acromial release surgery on her right shoulder and received permanent partial disability benefits for her injuries. Mathena also filed and settled workers compensation claims for bilateral carpal tunnel syndrome and low back injuries.

On June 21, 2000, Mathena filed a workers compensation claim for injuries to her bilateral upper extremities and shoulders due to repetitive overuse while performing her normal job duties. The

parties stipulated to an accident date of October 7, 2000. Mathena reported to her supervisors the pain she was having while trimming carcasses, and thereafter she received medical treatment from Dr. Michael P. Estivo, Dr. Jeffrey T. MacMillan, Dr. Lynn D. Ketchum, and Dr. James N. Glenn.

Tyson accommodated Mathena during her medical treatment, allowing her to perform a light duty job of labeling and later a temporary job of general monitoring and inspection of the carcass trimming. Her last day of work was June 10, 2002. Tyson placed Mathena on a leave of absence because they could not accommodate her restrictions and paid temporary total disability until she was released from medical treatment. On June 21, 2002, 11 days after her last day of work at Tyson, Dr. Vito Carabetta examined Mathena and diagnosed moderately severe right cubital tunnel syndrome.

Dr. Ketchum, the independent medical examiner, conducted two examinations of Mathena. The first examination occurred in May 2001 while Mathena was undergoing treatment and still working at Tyson. Dr. Ketchum's second independent medical examination occurred in June 2003. Dr. Ketchum concurred in Dr. Carabetta's diagnosis of severe cubital tunnel syndrome in Mathena's right elbow. Dr. Ketchum testified that Mathena's right shoulder injury was an aggravation of her injuries that necessitated surgery in 1995. However, Dr. Ketchum was unable to determine what portion of her impairment rating would be attributable to the aggravation since her surgery in 1995. Dr. Ketchum assigned 30% permanent impairment rating to the right upper extremity and 6% to the left shoulder, for a combined rating of 21% permanent impairment to the body as a whole. The rating included 20% impairment for the cubital tunnel syndrome of the right upper extremity, 5% for loss of grip strength, and 5% for the capsule adhesions following the first right shoulder surgery.

Mathena retained Dr. Pedro A. Murati to examine her in January 2003. Dr. Murati diagnosed myofascial pain syndrome affecting bilateral shoulders and cervical spine, bilateral medial and lateral epicondylitis and tendinitis, tenyosynovitis of right fourth and fifth digit and left first digit, and pain in both wrists with crepitus and

mild instability. Dr. Murati rated Mathena's permanent partial impairment as 28% to the body as a whole, which included the impairment of the right shoulder, as a result of her injuries and physical condition.

The administrative law judge (ALJ) based his opinion on the report filed by Dr. Ketchum. The ALJ determined that Mathena was entitled to a 7% functional impairment rating for the undisputed injury to her left shoulder and decreased grip strength in her right upper extremity, but he found Mathena's cubital tunnel syndrome most likely developed after the stipulated date of the accident and was diagnosed after the claimed date of accident. The ALJ found Mathena also failed to prove that she developed additional impairment in her right shoulder as the result of her job duties. The ALJ found that since Tyson terminated Mathena, she was entitled to work disability.

The ALJ found Mathena made a good faith effort to find employment and was entitled to 47% wage loss through the period Tyson paid benefits and then 53% wage loss thereafter. The ALJ gave equal credence to both task loss evaluations and settled on a 52.50% task loss. The ALJ awarded permanent partial disability of 49.75% and 52.75%, the former again being the period when Tyson paid benefits.

Tyson appealed the ALJ's award arguing, *inter alia*, that Mathena's recovery was limited to 2 separate scheduled injuries as rated by Dr. Ketchum and foreclosed any claim for work disability. Mathena argued that the ALJ erred in failing to award compensation for the cubital tunnel in her right elbow and also for shoulder complaints that were caused by her work. The Workers Compensation Board (Board) affirmed the ALJ's award regarding the permanent work disability. The Board found overwhelming evidence that Mathena suffered a bilateral upper extremity injury while working at Tyson and that Tyson was applying a far too narrow interpretation requiring identical injuries to parallel limbs in order to award work disability. The Board disagreed with the ALJ's rejection of impairment for cubital tunnel syndrome. The Board found Mathena's cubital tunnel syndrome was a repetitive injury that manifested itself or was diagnosed after she was terminated

from Tyson. The Board included the cubital tunnel condition and determined that Mathena had an impairment of 19% to the body as a whole. The Board found Tyson failed to prove preexisting impairment to Mathena's right shoulder and also that the average of the task loss evaluations was actually a 61.5% task loss.

Tyson appeals.

Tyson argues the Board erred in holding that Mathena was entitled to work disability. Based on *Pruter v. Larned State Hospital*, 271 Kan. 865, 26 P.3d 666 (2001), Tyson contends Mathena should be compensated under the scheduled injury statute, K.S.A. 44-510d, which would compensate Mathena only for the functional impairment to each injured limb instead of awarding compensation as a whole body injury pursuant to K.S.A. 44-510e.

The issue regarding scheduled injuries requires this court to interpret and apply the scheduled injury statute, K.S.A. 44-510d, of the Kansas Workers Compensation Act (Act), K.S.A. 44-510 *et seq.*, and various cases interpreting and applying that provision. Interpretation of a statute is a question of law which an appellate court must review de novo. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. *Auten v. Kansas Corporation Comm'n.*, 27 Kan. App. 2d 252, 254, 3 P.3d 86, *rev. denied* 269 Kan. 931 (2000). When the agency is one of special competence and experience, its interpretation of a statute may be entitled to controlling significance. If there is a rational basis for the agency's interpretation, it should be upheld on judicial review. *In re Application of Zivanovic*, 261 Kan. 191, 193, 929 P.2d 1377 (1996). If an administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps. *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 645, 983 P.2d 853 (1999).

The key dispute in this case is whether Mathena has simultaneous scheduled injuries to two limbs within the statutory injuries calculations in K.S.A. 44-510d or whether the injuries transfer as nonscheduled injuries to the whole body under K.S.A. 44-510e.

The statute applicable to scheduled injuries provides in relevant part:

"(a) Where disability, partial in character but permanent in quality, results from the injury, the injured employee shall be entitled to compensation provided in K.S.A. 44-510h and 44-510i and amendments thereto, but shall not be entitled to any other or further compensation for or during the first week . . . . Thereafter compensation shall be paid for temporary total loss of use and as provided in the following schedule . . . .

. . . .

(13) For the loss of an arm, excluding the shoulder joint, shoulder girdle, shoulder musculature or any other shoulder structures, 210 weeks, and for the loss of an arm, including the shoulder joint, shoulder girdle, shoulder musculature or any other shoulder structures, 225 weeks.

. . . .

(21) Permanent loss of the use of a finger, thumb, hand, shoulder, arm, forearm, toe, foot, leg or lower leg or the permanent loss of the sight of an eye or the hearing of an ear, shall be equivalent to the loss thereof. For the permanent partial loss of the use of a finger, thumb, hand, shoulder, arm, toe, foot or leg, or the sight of an eye or the hearing of an ear, compensation shall be paid as provided for in K.S.A. 44-510c and amendments thereto . . . ."

. . . .

"(b) Whenever the employee is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in K.S.A. 44-510h and 44-510i and amendments thereto, and no additional compensation shall be allowable or payable for any temporary or permanent, partial or total disability . . . ." K.S.A. 44-510d.

Thus, a scheduled injury includes compensation for the complete loss of the scheduled member and the permanent partial loss of use of the member. K.S.A. 44-510d(a)(21). With scheduled injuries, compensation is based on the schedule rather than based on the individual's loss in earning power. *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 771, 830 P.2d 41 (1992).

Temporary or permanent partial disabilities due to unscheduled injuries are calculated under K.S.A. 44-510e. This section defines a "[p]ermanent partial general disability" as one where the employee "is disabled in a manner which is partial in character and permanent in quality and which is not covered by the schedule in K.S.A. 44-510d and amendments thereto." K.S.A. 44-510e(a). If an injury is determined to be an unscheduled injury, it typically

leads to a larger award. Kansas Workers Compensation Handbook § 11.01, p. 11-1 (rev. ed. 1990).

The occurrence of simultaneous scheduled injuries provides another wrinkle in the analysis of whether the injuries should be compensated according to the schedule statutes. The most recent case on the simultaneous scheduled injuries is *Pruter*, where our Supreme Court clarified existing law concerning whether injuries to more than one body member should be treated as two separate scheduled injuries or as a single whole body disability. 271 Kan. at 872. Pruter fell and simultaneously broke her right wrist and her right ankle. The Board affirmed the ALJ, who found Pruter sustained a 6% permanent impairment to her "right upper extremity" and a 7% permanent impairment to her "right lower extremity," which combined equaled a 7% functional impairment to the body as a whole. The Court of Appeals reversed the Board's decision and found that compensation should have been awarded based upon two separate scheduled injuries under K.S.A. 44-510d, and the Supreme Court agreed. See 271 Kan. at 867, 876.

The *Pruter* court conducted an extensive review of the case law beginning with *Honn v. Elliott*, 132 Kan. 454, 295 Pac. 719 (1931), holding that simultaneous injuries to parallel members allows for an award of permanent partial disability benefits. 271 Kan. at 869-72. The *Pruter* court held that when simultaneous injuries cause substantial impairment to parallel limbs then disability should be calculated based on a whole body injury; however, if all these criteria are not met, then the disability should be calculated as two separate scheduled injuries. 271 Kan. at 872-73.

The *Pruter* court also set forth the rule and exception regarding scheduled injuries:

"Regardless, the scheduled injury statute, K.S.A. 44-510d, is not an exception to K.S.A. 44-510e, which relates to general disabilities. As the respondent points out, the scheduled injury statute precedes the general disabilities statute. Also, the clear language of K.S.A. 44-510e belies any question that scheduled injuries are the general rule:

'(a) . . . [E]xcept that in case of temporary or permanent partial general disability *not covered by such schedule*, the employee shall receive weekly compensation as determined in this subsection . . . . Permanent partial general disability exists when the employee is disabled in a manner which is partial in

character and permanent in quality and *which is not covered by the schedule* in K.S.A. 44-510d and amendments thereto.'

"Thus, K.S.A. 44-510d states the general rule for injuries to scheduled members, and the *Honn* rule is the exception. If any rule is to be narrowly construed, it must be the exception created in *Honn*." 271 Kan. at 873.

Further, the *Pruter* court noted K.S.A. 44-510c creates a rebuttable presumption that loss of parallel members results in a permanent *total* disability. This presumption is rebutted by evidence the injury does not meet the definition of permanent *total* disability. 271 Kan. at 875. To be permanently and totally disabled, an employee because of his or her injury must be permanently and completely "incapable of engaging in any type of substantial and gainful employment." K.S.A. 44-510c(a)(2). Pruter was able to return to the same work and for comparable wages. The *Pruter* court held the presumption was rebutted and that disability benefits were to be awarded based on two separate scheduled injuries and not as a permanent whole body disability. 271 Kan. at 875-76.

In the case at bar, the ALJ found simultaneous injuries to Mathena's left shoulder and right hand, and the Board found simultaneous injuries to her left shoulder and right hand and elbow. The Board rejected Tyson's argument that in order for the *Honn* exception to apply there must be an identical parallel limb impairment:

"Respondent offers *Pruter* for the proposition that absent *identical* parallel limb impairment, an injured employee's recovery is limited to that set forth under the schedule in K.S.A. 44-510d. Under this set of facts, claimant has a variety of physical complaints and impairments to both upper extremities, with evidence that at least some of her right shoulder complaints pre-dated the period covered by this claim. Respondent argues 'claimant's left shoulder injury and decreased grip strength in her right hand are clearly not 'parallel limbs' for purposes of invoking K.S.A. 44-510c(a)(2) and permanent partial disability.

"The Board has considered respondent's argument and believes it to be a far too narrow interpretation of the *Pruter* rationale. In this instance, the overwhelming evidence shows that claimant has suffered a bilateral upper extremity injury while working for respondent. Although *Pruter* speaks of parallel limbs, that does not, in the Board's view, necessarily mean identical parallel limbs or joints or resulting symmetrical injuries. The application of the statutory schedule to each individual employee's injury is to be done on a case-by-case basis. In the instant case, the Board finds that the claimant has sustained a general bodily

disability as a result of her work-related injuries which, for purposes of calculation, is October 7, 1999, the stipulated date of accident."

We find the Board has misapplied the statutes regarding workers compensation injuries in light of *Pruter*. The Supreme Court has specifically stated: "K.S.A. 44-510d states the general rule for injuries to scheduled members, and the *Honn* rule is the exception. If any rule is to be narrowly construed, it must be the exception created in *Honn.*" *Pruter*, 271 Kan. 873. The Board's interpretation of the *Honn* simultaneous injury rule is not being applied in a narrow manner. Rather, the Board's holding is a liberal interpretation that makes the scheduled injuries the exception rather than the rule. Additionally, K.S.A. 44-510d(a)(11) and (13) distinguish between the injuries in this case: injury to arm, including shoulder - 225 weeks; injury to arm, excluding shoulder - 210 weeks; and injury to hand - 150 weeks.

*Pruter* applies in this case. We agree with Tyson that Mathena's injuries to her left shoulder and to her right hand and elbow are more similar to the scheduled injuries in *Pruter*, right arm and right leg, than they are to the injuries to the employee's feet in *Honn* and similar parallel injuries in the *Honn* prodigy. We do not find the Board's rationale of parallel injuries to upper right extremities is sufficient simultaneous injuries to except this case from the schedules of injuries in K.S.A. 44-510d. Under the facts of this case, Mathena's injuries do not constitute injuries to parallel members. The Board's award of work disability is reversed, and the Board is ordered to determine Mathena's injuries under K.S.A. 44-510d.

Tyson also argues the Board erred in awarding compensation to Mathena for injuries to her right elbow as a result of cubital tunnel syndrome. Tyson argues the injuries were not diagnosed or treated during Mathena's employment and that symptoms of cubital tunnel syndrome appeared only after a lengthy period of light-duty employment.

Whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Webber v. Automotive Controls Corp.*, 272 Kan. 700, 703-04, 35 P.3d 788 (2001). Substantial evidence in workers compensation cases is evidence that

possesses something of substance and relevant consequence and carries with it fitness to induce the conclusion that the award is proper or furnishes a substantial basis of fact from which the issue raised can be reasonably resolved. The appellate court reviews the evidence in the light most favorable to the prevailing party and does not reweigh the evidence or assess the credibility of the witnesses. *Neal v. Hy-Vee, Inc.*, 277 Kan. 1, 16-17, 81 P.3d 425 (2003).

We find there is substantial competent evidence to support the Board's finding that Mathena suffered work-related injuries in the form of cubital tunnel syndrome during her employment at Tyson. In repetitive injury cases, the injury can occur before the condition has manifested itself. See *Depew v. NCR Engineering & Manufacturing*, 263 Kan. 15, 27, 947 P.2d 1 (1997). Dr. Carabetta diagnosed Mathena's condition 11 days after she was terminated from Tyson. Tyson is correct that Mathena had been on light-duty accommodated work for the nearly a year before her termination and during that time did not perform activities that would have caused cubital tunnel syndrome. However, equally true is the fact that for nearly 10 years her job of trimming contamination off cattle carcasses forced her to repetitiously sharpen a knife, use a hook, hold the knife and hook, and twist and reach from the ground level to above her head for up to 8 hours per day in cold temperatures. Dr. Ketchum testified that given Dr. Carabetta's diagnosis of cubital tunnel syndrome in relation to her termination, the condition was in existence during the time she was working at Tyson.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

JOHNSON, J., dissenting: I agree with the majority's ruling that substantial competent evidence supported the Board's finding of a work-related injury to Mathena's right elbow. I disagree with the majority's conclusion that Mathena's simultaneous injuries, resulting in the partial loss of use of both arms, is not compensable as a disability to the body as a whole.

The majority appears to find that the parallel limb simultaneous injury rule propounded in *Honn v. Elliott*, 132 Kan. 454, 295 Pac. 719 (1931), and its progeny survives the Supreme Court's decision

in *Pruter v. Larned State Hospital*, 271 Kan. 865, 26 P.3d 666 (2001), when it states that "[t]he *Pruter* court held that when simultaneous injuries cause substantial impairment to parallel limbs then disability should be calculated based on a whole body injury." I read *Pruter* as departing from an emphasis on the parallelism of the injuries.

The *Pruter* opinion specifically discussed *Wammack v. Root Manufacturing Co.*, 184 Kan. 367, 336 P.2d 441 (1959), where simultaneous injuries to both thumbs were compensated as two scheduled injuries. *Pruter* noted that *Wammack* distinguished *Honn* based upon the body part involved. Specifically, in *Honn*, R.S. 1923, 44-510(3)(a) (1930 Supp.) "made compensation for dual injuries to the *feet* compensable 'on the basis of total disability,'" whereas in *Wammack* the injured *thumbs* were not included in that statutory provision on total disability. (Emphasis added.) *Pruter*, 271 Kan. at 870. Subsequently, the court observed that the Supreme Court had "consistently found that two simultaneous scheduled injuries do not necessarily result in a whole body disability" and that "[t]he statutory schedule does not purport to provide compensation for two of any one body part, except both ears." 271 Kan. at 875.

As the majority notes, *Pruter* discussed and interpreted the 1959 amendment to the total disability statute, K.S.A. 44-510c(a)(2), which provides in relevant part: "Loss of both eyes, both hands, both arms, both feet, or both legs, *or any combination thereof*, in the absence of proof to the contrary, shall constitute a permanent total disability." (Emphasis added.) *Pruter* found that "the legislature intended that the combined loss of any of the listed members (eye, hand, arm, foot, leg) raises a presumption that the injured worker suffered permanent total disability." 271 Kan. at 875. The opinion went on to find that the proof of the relatively minor nature of Pruter's injuries, *i.e.*, 7% functional impairment to the body as a whole, together with evidence that she returned to her former position earning a comparable rate of pay, obviously constituted proof that Pruter was not suffering a permanent total disability, as that condition is defined in K.S.A. 44-510c(a)(2). 271 Kan. at 875-76.

Thus, the *Pruter* opinion seems to suggest that dual injuries to body parts contained in the schedules are to be compensated according to the applicable K.S.A. 44-510d schedules unless both injured body parts are listed in K.S.A. 44-510c(a)(2), *i.e.*, an eye, hand, arm, foot, or leg. If both injured body parts are listed in K.S.A. 44-510c(a)(2), then the worker is presumed to be permanently and totally disabled, in the absence of proof to the contrary. However, if there is evidence contradicting that the worker has been rendered "completely and permanently incapable of engaging in any type of substantial and gainful employment," as required for permanent total disability under K.S.A. 44-510c(a)(1), then we return to the schedules to calculate compensation rather than analyzing the circumstances as a permanent *partial* disability.

Obviously, the legislature's intent was to remove from the schedules dual, simultaneous injuries resulting in the loss of both arms. Those injuries are sent to the arena of whole body disability by establishing a presumption of permanent total disability. One might find it counterintuitive to say that the legislature intended to send the injuries back to the schedules, if there is evidence that the impairment is slightly less than total. Once the focus has shifted to a whole body impairment analysis, it is more logical to remain there, even if the disability falls short of total. Further, analyzing the less than total disability occasioned by the loss of both arms under the permanent partial disability statute provides for a differentiation between the slightly impaired Pruter and the much more seriously disabled Mathena. The schedules would apparently treat them the same.

Notwithstanding the foregoing editorialization, we are duty bound to follow Supreme Court precedent. See *Pruter v. Larned State Hospital*, 28 Kan. App. 2d 302, 312, 16 P.3d 975 (2000), *aff'd* 271 Kan. 865, 26 P.3d 666 (2001). Therefore, if *Pruter* abrogates the *Honn* rule, which the opinion's rationale appears to do, the majority would be correct in its result. However, *Pruter* does not say that it is overruling *Honn*, but, to the contrary, specifically says that the *Honn* rule of exception to scheduled compensation is to be narrowly construed. *Pruter*, 271 Kan. at 873. Presumably, if we

are to narrowly construe the *Honn* rule, it must still retain some viability. Under that rule, the Board should be affirmed.

I simply disagree with the majority's conclusion that Mathena's injuries to her left shoulder and right hand and elbow are more akin to Pruter's right arm and right leg injuries than to Honn's injuries to both feet. The majority suggests that Mathena's left shoulder injury and her right elbow and hand injuries are not injuries to parallel limbs. One would perceive that it makes scant difference to Mathena that she cannot perform work with her right arm because of an elbow injury and cannot perform work with her left arm due to a shoulder injury. The bottom line is that she has lost the use of both *arms*. Perhaps one can perceive of a work task that could be performed by an arm impaired by an elbow and hand dysfunction which could not be performed by an arm impaired at the shoulder, but none comes readily to mind.

The majority is persuaded by the distinction in the scheduled compensation between arm loss that includes the shoulder joint and one that does not include the shoulder. See K.S.A. 44-510d(a)(13). The schedule, however, contemplates a single injury. As *Pruter* suggested, the schedules do not purport to provide compensation for two of any one body part, such as arms. See 271 Kan. at 875. Where the statutes talk about dual injuries, reference is made to the loss of two *arms*, without distinguishing whether the use loss is caused by the shoulder joint or the elbow joint. See K.S.A. 44-510c(a)(2). The majority's narrow interpretation of the *Honn* rule as requiring the loss of use of parallel *joints*, rather than limbs, circumvents rather than effectuates the policy and intent of the legislature. I would affirm the Board.