State ex rel. Utilities Comm. v. Conservation Council

STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION; DUKE POWER COMPANY (APPLICANT); NORTH CAROLINA PUBLIC INTEREST RESEARCH GROUP; NORTH CAROLINA TEXTILE MANUFACTURERS ASSOCIATION; PEOPLES ALLIANCE; AND PUBLIC STAFF, NORTH CAROLINA UTILITIES COMMISSION v. CONSERVATION COUNCIL OF NORTH CAROLINA; GREAT LAKES CARBON CORPORATION; AND KUD-ZU ALLIANCE

No. 126A84

(Filed 2 October 1984)

**1. Utilities Commission § 57— review of Utilities Commission decision—adequate findings**

In an order in a general rate case, the Utilities Commission's recitation of the factors in G.S. 62-133(b)(1), its summarization and rejection of appellant's statutory interpretation arguments, and its conclusions that all of Duke's CWIP expenditures were reasonable, prudent, and needed to insure future service to customers were adequate to meet the requirements of G.S. 62-79(a).

**2. Utilities Commission § 34— findings not required for CWIP**

The Utilities Commission is not required by G.S. 62-133(b)(1) to make findings on the need for construction before considering the reasonableness of CWIP costs incurred where the Commission has already issued a certification that "public convenience and necessity requires, or will require such construction"; or findings that the construction will be completed within a reasonable time when there is evidence in the record that the plant would be completed within a reasonable time and when there was no challenge to the reasonableness of the prices paid by Duke.

**3. Utilities Commission § 57— finding that construction work was in progress**

The Utilities Commission's finding and conclusion that construction work was in progress at Cherokee Nuclear Station and that the costs should be included in Duke's rate base is supported by competent, material, and substantial evidence in that delay in the construction of Cherokee was due to economic conditions, in that Duke intended to complete Cherokee once its financial circumstances permitted, and in that the Commission was aware of the possibility that uncertain economic conditions might force Duke to cancel Cherokee.

**4. Utilities Commission § 34— AFUDC—exclusion from CWIP—capitalization**

In a general rate case in which the allowance for funds used during construction, AFUDC, was entered on Duke Power Company's books after 1 July 1979, the effective date for construction work in progress, G.S. 62-133(b)(1), but had accrued on construction work prior to that date, the Utilities Commission erred by including the AFUDC in the rate base as a CWIP expense. However, the AFUDC amount may be capitalized.

**5. Utilities Commission §§ 21, 51— power of the Supreme Court to order refunds**

The power given a court reviewing an order of the Utilities Commission under G.S. 92-94(b) includes the power to order refunds, even though such

authority is not specifically set out in the statute, because ratepayers would otherwise lack adequate relief while utilities could retain the proceeds of illegally charged rates; moreover, refunds ordered by the Supreme Court do not constitute retroactive ratemaking because rates ordered by the Utilities Commission in an order in which the Commission made an error of law are not lawfully established until the appellate courts have made a final ruling.

**6. Utilities Commission § 38— improper use of prior expedited fuel cost proceeding to determine base rates**

In a general rate case, the Court of Appeals properly remanded the case to the Utilities Commission where the Commission relied on a prior expedited fuel cost proceeding under G.S. 62-134(e) in determining Duke's base fuel cost because an expedited fuel proceeding considers fluctuations in fuel costs and not the reasonableness of the utility's base fuel cost.

APPEAL by Great Lakes Carbon Corporation and the Kudzu Alliance pursuant to G.S. 7A-30(3) (repealed 1983) from the decision of the Court of Appeals at 64 N.C. App. 266, 307 S.E. 2d 375 (1983), *modified on rehearing*, 66 N.C. App. 456, 311 S.E. 2d 617 (1984), affirming in part and remanding in part the order of the North Carolina Utilities Commission entered 11 February 1982 in Docket No. E-7, Sub. 314. Heard in the Supreme Court 11 June 1984.

On 18 March 1981, Duke Power Company, the applicant-appellee (hereinafter Duke), filed with the North Carolina Utilities Commission (hereinafter Commission) an application to increase its revenues by approximately 19.7% or $211,000,000. The Commission ordered that the application be treated as a general rate case and suspended the proposed rate increase. The matter was set for hearing and public hearings were conducted at several locations across the State. Various parties, including the appellants and the Public Staff of the Commission were permitted to intervene. The Commission issued its final order on 11 February 1982 allowing $166,403,000 of the proposed increase applied for by Duke. After considering data from a test year ending 31 December 1980 the Commission decided that an increase of 11.92% would provide a fair rate of return for Duke. Intervenors Kudzu Alliance (hereinafter Kudzu), Conservation Council of North Carolina, and Great Lakes Carbon Corporation (hereinafter Great Lakes) appealed. The Court of Appeals affirmed the decision of the Commission in all respects except with regard to whether there was sufficient evidence in the record as to the

reasonableness of Duke's fuel costs. The court remanded the case on that issue for further findings of fact.

Intervenors Kudzu and Great Lakes appealed the decision of the Court of Appeals.

*Duke Power Company by Steve C. Griffith, Jr. and George W. Ferguson, Jr.; Kennedy, Covington, Lobdell & Hickman by Clarence W. Walker, Stephen K. Rhyne, and Myles E. Standish, attorneys for applicant-appellee Duke Power Company.*

*Byrd, Byrd, Ervin, Blanton, Whisnant & McMahon, P.A., by Robert B. Byrd and Sam J. Ervin IV, attorneys for intervenor-appellant Great Lakes Carbon Corporation.*

*Edelstein, Payne and Jordan, by M. Travis Payne, attorney for intervenor-appellant Kudzu Alliance.*

COPELAND, Justice.

## I.

Appellants argue that the Commission erred in including the sum of $144,841,000 in Duke's retail rate base for construction work in progress (hereinafter CWIP) because its findings on this matter were inadequate as a matter of law. Appellants base their argument on both G.S. § 62-79(a) and G.S. § 62-133(b)(1) (1977) (amended 1981). Each statute will be considered separately.

[1]  G.S. § 62-79(a) provides that:

All final orders and decisions of the Commission shall be sufficient in detail to enable the court on appeal to determine the controverted questions presented in the proceedings and shall include:

(1) Findings and conclusions and the reasons or bases therefor upon all the material issues of fact, law, or discretion presented in the record, and

(2) The appropriate rule, order, sanction, relief or statement of denial thereof.

The appellants contend that the final order of the Commission falls short of this standard because its finding of Fact

Number 7 is simply a recitation of the factors in G.S. § 62-133 (b)(1).[1] We disagree.

The purpose of the findings required by G.S. § 62-79(a) is to provide the reviewing court with sufficient information to allow it to determine the controverted questions presented in the proceedings. In the section of its order entitled "Evidence and Conclusions for Finding of Fact No. 7" the Commission summarized and rejected the statutory interpretation arguments made by the appellants. The Commission then concluded that all of Duke's CWIP expenditures, in particular those for the Cherokee plant and allowance for funds used during construction accrued after 1 July 1979, were reasonable and prudent expenditures under G.S. § 62-133(b)(1). The Commission further concluded that the expenditures were needed to insure adequate service to Duke's customers in the future. The Court of Appeals properly noted that such scant findings and conclusions barely pass muster. *State ex rel. Utilities Commission v. Conservation Council*, 64 N.C. App. at 273, 307 S.E. 2d at 379. We do not approve the practice of using such sparse evidence and conclusions to support the Commission's findings of fact, but we hold that they were adequate to meet the requirements of G.S. § 62-79(a). The Commission's summary of the appellant's argument and its rejection of the same is sufficient to enable the reviewing court to ascertain the controverted questions presented in the proceeding. That is all that G.S. § 62-79(a) requires.

[2] A somewhat more difficult issue is posed by appellants' contention that G.S. § 62-133(b)(1) first requires the Commission to make findings on the reasonableness and prudence of including CWIP expenses in the rate base before it considers the reasonableness of the CWIP costs incurred. G.S. § 62-133(b)(1) as it read at the relevant time provides that the Commission shall:

Ascertain the reasonable original cost of the public utility's property used and useful, or to be used and useful within a

---

1. 7. The reasonable original cost of Duke's property used and useful, or to be used and useful within a reasonable time after the test period, in providing the service rendered to the public within this State, less that portion of the cost which has been consumed by previous use recovered by depreciation expense, plus the reasonable original cost of investment in plant under construction (construction work in progress of CWIP) less cost-free capital is $2,138,009,000.

reasonable time after the test period, in providing the service rendered to the public within this State . . . . In ascertaining the cost of the public utility's property, construction work in progress as of the effective date of this subsection shall be excluded until such plant comes into service but reasonable and prudent expenditures for construction work in progress after the effective date of this subsection shall be included subject to the provisions of subparagraph (b)(5)[2] of this section.

Appellants argue that before the Commission may include CWIP expenses in the rate base it must first find that the plant under construction is necessary and will be completed in a reasonable time.

We hold that G.S. § 62-133(b)(1) does not require the Commission to make new findings on the need for the construction. Before any public utility begins the construction of a facility for generating electricity for use by the public it must first obtain from the Commission a certificate stating that "public convenience and necessity requires, or will require such construction." G.S. § 62-110.1(a). Before such a certificate can be granted the applicant must file an estimate of construction costs and the Commission must hold public hearings. G.S. § 62-110.1(e). This procedure satisfies appellant's argument that the construction must be necessary.

The wording used by the legislature makes it clear that the Commission must include all reasonable CWIP expenditures in the rate base. The only matter left to the discretion of the Commission is whether such expenditures are reasonable and prudent. Evidence of whether the plant under construction will be completed within a reasonable time is pertinent to deciding if expenditures for such construction are reasonable and prudent. While it is the better practice for the Commission to specifically find that the construction will be completed within a reasonable time, the statute does not require it so long as there is evidence in the record that the plant would be completed within a reasonable

---

2. The reference to subsection (b)(5) in the Michie Company version of the General Statutes appears to be a typographical error even though it is confirmed by 1977 N.C. Sess. Laws c. 691, s. 2. The reference should be to G.S. § 62-133(b)(4a).

time. There was sufficient evidence in the record to allow the Commission to conclude that the Cherokee units would be completed within a reasonable time. We are not persuaded by the appellants' argument that the Commission must make findings as to the cost of each project and when it will be needed. Nowhere in G.S. § 62-133(b)(1) is there such a requirement. To require such extensive evidence would put an undue burden on Duke and cause the ratemaking process to be more time consuming and difficult of administration.

Costs are presumed to be reasonable unless challenged. *Utilities Commission v. Intervenor Residents*, 305 N.C. 62, 76-77, 286 S.E. 2d 770, 779 (1982), and there was no challenge to the reasonableness of the prices paid by Duke. Further, the Commission found that Duke's construction expenditures were reasonably incurred and were needed to provide adequate electric service to its customers. The Commission's findings on this point are supported by competent, material, and substantial evidence and are conclusive on appeal. *Utilities Commission v. Intervenor Residents*, 305 N.C. at 77, 286 S.E. 2d at 779.

II.

[3] We next turn to the portion of CWIP expenditures ($103,880,000) related to the Cherokee Nuclear Station. G.S. § 62-133(b)(1) requires that expenses added to the rate base to represent the costs of construction must come from construction work that is in progress. Appellants argue that work had ceased on Cherokee by the time the hearings were held because Duke had indefinitely delayed construction and had no target date for completion. Work on unit two had been terminated and work on unit one was reduced to a bare minimum. Also, Duke's witness acknowledged that the company had not yet decided whether the Cherokee plant would be completed. However, Duke did offer evidence tending to show that the delay was due to the uncertain economic conditions in 1981, including Duke's financial circumstances, and that the Cherokee units were needed to provide Duke's customer's with an adequate reserve margin. Approximately 166 people were still working on Cherokee unit one, no contracts had been cancelled, and Duke's vice president assured the Commission that Duke intended to complete Cherokee. The Commission considered this evidence and included the costs of Cherokee as a CWIP expenditure.

We note that before this appeal reached the Court of Appeals Duke had abandoned the Cherokee Nuclear Station. G.S. § 62-93 provides that a reviewing court may, in its discretion, remand a case for further consideration by the Commission if evidence has been discovered since the hearing before the Commission "that could not have been obtained for use at that hearing by the exercise of reasonable diligence, and will materially affect the merits of the case, . . ." The question before the Commission to which this evidence applies is whether the construction done at Cherokee Nuclear Station was in progress during the test year ending 31 December 1980. After considering the evidence we hold that the subsequent cancellation of Cherokee does not materially affect the Commission's determination that the Cherokee Nuclear Station was construction work in progress *during the test year.* Therefore, we decline to remand the case for further consideration of this issue.

The validity of the Commission's findings and conclusions must be determined in light of the evidence that was presented to it. There was evidence before the Commission from which it could reasonably conclude that the delay in the construction of Cherokee was due to economic conditions and that Duke intended to complete Cherokee once its financial circumstances enabled it to do so. The Commission was also made aware of the possibility that the uncertain economic conditions prevailing at the time might force Duke to cancel Cherokee. Further, the Court of Appeals correctly pointed out that Duke's failure to specify a definite completion date is irrelevant because the statute does not require it. Based on a review of the entire record, we hold that the Commission's finding and conclusion that construction work was in progress at Cherokee and that the costs should be included in Duke's rate base is supported by competent, material, and substantial evidence and so is binding on this Court. *Utilities Commission v. Intervenor Residents,* 305 N.C. at 76-77, 286 S.E. 2d at 779.

III.

[4] Appellants next argue that the Commission erred in including in Duke's rate base $29,685,371 of allowance for funds used during construction (hereinafter AFUDC) which was entered on Duke's books after 1 July 1979 but accrued on construction

work that occurred prior to that date. CWIP expenses that occur before 1 July 1979 are to be excluded from the rate base until such plant comes into service. G.S. § 62-133(b)(1). Appellants argue that the $29,685,371 AFUDC occurred before 1 July 1979 and so is not includable as a CWIP expense.

For a better understanding of this issue a brief explanation of AFUDC is in order. Before the 1977 amendment of G.S. § 62-133(b)(1), utilities were not allowed to include CWIP in their rate base. Instead, a utility would add together all of the costs incurred by a project each year and multiply that by the AFUDC rate. The AFUDC rate is a rate of interest which represents as nearly as possible the actual cost of money used for construction. The figure that results from multiplying the costs times the AFUDC rate is capitalized annually until the plant comes into service and is then recovered along with the original costs of the plant.

Appellants contend that the AFUDC expenses in question are not includable for several reasons. First, AFUDC expenses in North Carolina have not been recoverable in the past until the plant they are related to has actually gone into service. Second, CWIP under G.S. § 62-133(b)(1) only includes expenditures for construction work that is in progress after the effective date of the statute. Third, G.S. § 62-133(b)(4a) forbids capitalization of AFUDC once a general rate is set after 1 July 1979. We agree that the $29,685,371 AFUDC is not properly includable in the rate base as a CWIP expense.

Prior to the effective date of the statute AFUDC was treated as a part of the cost of the plant. As Justice Lake stated in *Utilities Commission v. Morgan*, 278 N.C. 235, 240, 179 S.E. 2d 419, 422 (1971): "The interest on the investment in this addition to plant, during the construction, is a part of its costs, just as truly as is the purchase price of the bricks, steel, copper wire, labor, etc., which go into the construction." While we have already held that the $29,685,371 AFUDC is not properly includable as a CWIP expense, G.S. § 62-133(b)(4a) does not bar Duke from capitalizing the AFUDC despite the fact that it was not actually entered on Duke's books until after the effective date of the statute. The purpose of G.S. § 62-133(b)(4a) is to prevent utility companies from obtaining a double recovery by capitalizing AFUDC after they have

had CWIP expenses for the same construction included in the rate base. In the case at bar no CWIP expenses can be added to the rate base for the construction on which the $29,685,371 AFUDC had accrued. If Duke were not allowed to capitalize the $29,685,371 AFUDC it would be unable to ever recover that part of its costs. We hold that G.S. § 62-133 (b)(4a) does not require such a result. On remand the Court of Appeals will direct the Commission to reduce Duke's CWIP expenses by $29,685,371 and order Duke to make appropriate refunds. Duke may enter the $29,685,371 on its books as AFUDC on construction that occurred before 1 July 1979.

## IV.

[5]   The final issue in this case briefed and argued by the parties concerns this Court's power to direct the Commission to order refunds from rates established by final order of the Commission. Duke argues that such refunds cannot be granted because to do so would constitute retroactive rate making prohibited under the North Carolina Statutes. We hold that the law is otherwise and affirm this Court's power to direct the Commission to order refunds.

"[R]etroactive rate making occurs when, . . . the utility is required to refund revenues collected, pursuant to the then lawfully established rates, for such past use." *Utilities Comm. v. Edmisten*, 291 N.C. 451, 468, 232 S.E. 2d 184, 194 (1977). The key phrase here is "lawfully established rates." A rate has not been lawfully established simply because the Commission has ordered it. If the Commission makes an error of law in its order from which there is a timely appeal the rates put into effect by that order have not been "lawfully established" until the appellate courts have made a final ruling on the matter.

Duke contends that the statutes limit any relief that this Court might give to prospective relief. In support Duke relies on the dichotomy between rates fixed by the Commission and those which are simply allowed to go into effect. Rates established by the Commission are deemed to be just and reasonable. G.S. § 62-132. Rates which the Commission simply allows to go into effect may be challenged by interested parties or the Commission, and after a hearing the Commission may order a refund if it finds the rates to be different from those established by the Commis-

sion and unjust or unreasonable. *Utilities Comm. v. Edmisten*, 291 N.C. 327, 352, 230 S.E. 2d 651, 666 (1976).

Duke concedes that G.S. §§ 62-130(e), 132 and 136 grant specific authority to the Commission to order refunds. However, Duke argues that G.S. § 62-94 which sets out the extent of appellate review prevents this Court from ordering refunds because it does not specifically grant such authority. G.S. § 62-94(b) gives the reviewing court the power to affirm, reverse, remand, or modify the order of the Commission if the substantial rights of the appellants have been prejudiced. This Court has often ordered refunds in the past, *State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 306 S.E. 2d 435 (1983); *Utilities Comm. v. Edmisten*, 299 N.C. 432, 263 S.E. 2d 583 (1980); *State ex rel. Utilities Comm. v. Edmisten*, 291 N.C. 451, 232 S.E. 2d 184 (1977), and we hold that G.S. § 62-94(b) gives this Court ample basis for ordering refunds to ratepayers who have been charged unlawfully high rates. To hold otherwise would deny ratepayers who appeal from erroneous orders of the Commission adequate relief while allowing utilities to retain the proceeds of rates that were illegally charged. It defies common sense to believe that the Legislature intended such a result. We, therefore, hold that this Court is authorized to order refunds when the Commission has made an error of law in its rate making procedures.

## V.

[6] We next turn to the Commission's determination of Duke's reasonable operating expenses as required by G.S. § 62-133. Neither party has argued this issue, but we will address it because of Chief Judge Vaughn's dissent. In determining Duke's base fuel cost the Commission relied on a fuel cost previously set in an expedited fuel cost proceeding pursuant to G.S. § 62-134(e) (Supp. 1979) (repealed 1982). In the expedited fuel cost proceeding the Commission had set Duke's fuel costs at 1.4660 cents per kWh. In its order the Commission reduced the base fuel cost to 1.3093 cents per kWh by subtracting .1567 cents kWh for fuel savings related to the operation of the McGuire unit from the 1.4660 cents per kWh cost. The Public Staff's recommended fuel cost was also based on a G.S. § 62-134(e) proceeding. There was some testimony concerning the reasonableness of Duke's fuel costs in-

curred over the twelve month test period, but there is no indication in the Commission's order that it ever ruled on the reasonableness of the fuel costs. The Court of Appeals remanded the case for further findings on the reasonableness of Duke's fuel costs because the absence of proper findings frustrates appellate review. G.S. § 62-94(b)(4). We agree.

The purpose of the expedited fuel proceeding was to allow a utility to change its rates based solely on fluctuations in fuel costs. The reasonableness of the utility's base fuel costs are not to be considered. *Utilities Commission v. Public Staff*, 309 N.C. at 212, 306 S.E. 2d at 445. On the other hand, in a general rate case brought under G.S. § 62-133(b)(3) the Commission must determine the reasonableness of fuel costs. The Commission's findings are inadequate to do so in this case. The Commission simply accepted the fuel cost established in the G.S. § 62-134(e) proceeding before adjusting it to reflect savings resulting from the operation of McGuire. Based on our decision in *State ex rel. Utilities Commission v. N.C. Textile Mfrs. Ass'n*, 309 N.C. 238, 306 S.E. 2d 113 (1983) (per curiam) we affirm the Court of Appeals' decision to remand the case for a determination of whether there is sufficient evidence of reasonableness on which to base new findings on the proper level of fuel expenses to be included in Duke's rates. If there is not sufficient evidence in the record on which to base new findings, the Commission may reopen the hearing and take additional evidence on the reasonableness of Duke's fuel costs over the twelve month test period.

### VI.

Lastly, we note that the portion of the Court of Appeals' opinion dealing with the inclusion of McGuire Unit One in the rate base and the separate hearing concerning McGuire has not been challenged by any of the parties. We find no error on these points.

The decision of the Court of Appeals is

Affirmed in part and reversed in part.