IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-286

No. COA21-188

Filed 3 May 2022

North Carolina Utilities Commission, Nos. SP-9590, Sub 0; E-2, Sub 1159; E-7, Sub 1156

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; DUKE ENERGY PROGRESS, LLC; DUKE ENERGY CAROLINAS, LLC; ACCION GROUP, LLC, Appellees,

v.

STANLY SOLAR, LLC, Appellant.

Appeal by Appellant from Order entered 20 October 2020 by the North Carolina Utilities Commission. Heard in the Court of Appeals 30 November 2021.

*The Allen Law Offices, by Dwight W. Allen, Britton H. Allen, and Brady W. Allen, and Jack Jirak, Deputy General Counsel Duke Energy Corporation, for Appellees Duke Energy Carolinas, LLC and Duke Energy Progress, LLC.*

*Burns, Day & Presnell, P.A., by James J. Mills and Daniel C. Higgins, for Appellee Accion Group, LLC.*

*Kilpatrick Townsend Stockton LLP, by Benjamin L. Snowden, for Appellant Stanly Solar, LLC.*

GORE, Judge.

¶ 1     Stanly Solar, LLC ("Stanly Solar") appeals from the Order Denying Motion for Return of CPRE Proposal Security ("Order") entered by the North Carolina Utilities Commission ("Commission"). For the following reasons, we affirm the Commission's order.

## I. Background

*A. Competitive Procurement of Renewable Energy Program*

On 27 July 2017, North Carolina Governor Roy Cooper signed into law North Carolina Session Law 2017-192. Session Law 2017-192, in conjunction with the Commission's Rule R8-71 and the Commission's Order Modifying and Approving Joint CPRE Program allowed for the implementation of the Competitive Procurement of Renewable Energy ("CPRE") Program by Duke Energy Carolinas, LLC ("DEC") and Duke Energy Progress, LLC ("DEP" and, together with DEC, the "Companies").

The CPRE Program was to be implemented in multiple tranches. As part of Tranche 1 the Companies issued a Request for Proposals ("RFP") for electric generating facilities, subject to a set criterion, from eligible market participants ("MPs") in 2018. MPs for this RFP included third-party renewable developers, the DEC/DEP Proposal Team, and any affiliate of DEC or DEP that elects to submit a proposal. Proposals were due 11 September 2018.

The RFP was administered by an Independent Administrator, the Accion Group, LLC ("Accion"). Accion was responsible for developing and utilizing the CPRE Program Methodology to evaluate all Proposals in accordance with the evaluation process established under Commission Rule R8-71(f)(3)(iii) and ensuring that all Proposals are treated equitably throughout the RFP.

¶ 5 Accion hosted a website ("IA RFP Website") as a base for all RFP communications. Among other things, the IA RFP Website was available to all MPs to provide comments on the RFP process, submit questions concerning the RFP (questions and responses were available to be viewed by all registered persons on the IA RFP Website), and provided a confidential message board to allow MPs to ask project specific questions to Accion without those questions being disclosed to all MPs.

¶ 6 Proposals to the Tranche 1 RFP were due by 11 September 2018. The evaluation process was to be split into two Steps. The full evaluation process of proposals and notification of winning bids was projected to be completed by 25 February 2019, with the contracting period to be completed by 24 April 2019.

¶ 7 If, at the conclusion of Step 1 of the evaluation process, a third-party MP was notified by Accion that their Proposal was selected to move on to Step two of the evaluation process, that MP would be required to post a Proposal Security in the amount of $20/kW, based on the proposed facility's inverter nameplate capacity. The Proposal Security would only be released (i) if the Proposal is eliminated by Accion due to failure to meet any required RFP criteria or action; (ii) if the MP elects to withdraw the Proposal pursuant to Section VI(A) of the RFP; (iii) if the Proposal is not selected as a winning proposal, upon closure of the RFP; or (iv) if the Proposal is selected as a winning Proposal, upon completion of the contracting phase of the RFP, including execution of the applicable contract and posting of security as required in

the applicable agreement. The Companies will be entitled to draw on the full amount of the Proposal Security if the MP (a) withdraws its Proposal during Step 2 of the evaluation process; or (b) if the Proposal is selected as a winning Proposal but the MP fails to complete the contracting phase.

¶ 8          Accion evaluated the Proposals in accordance with Commission Rule R8-71(f)(3). Commission Rule R8-71(f)(3) required Accion to perform an initial ranking of Proposals based on economic and noneconomic criteria in evaluation Step 1. Noneconomic criteria considered included facility permitting, financing experience, technical development and operational experience, and historically underutilized businesses. Step 2 of the evaluation process required the T&D Sub-Team to assess the system impact of the Proposals and assign any System Upgrade costs to each Proposal.

¶ 9          If during the Step 2 evaluation process the T&D Sub-Team determined that any required Interconnection Facilities or System Upgrades could not be completed by 1 January 2021, but could be completed by 1 July 2021, the IA was to notify the MP of the projected completion date of the Interconnection Facilities and System Upgrades, then the MP would have the option to either elect to allow the Proposal to remain in the RFP or withdraw the Proposal. However, if it was determined that any required Interconnection Facilities or System Upgrades could not be completed by 1 July 2021, the IA would remove the Proposal from further consideration.

*B. Stanly Solar's Bid*

¶ 10    Stanly Solar is a 50 MW solar project under development in Stanly County, North Carolina. Stanly Solar had received a system impact study in December 2017 and was designated as a "Late-Stage Proposal," meaning that it was not included in the Tranche 1 "grouping study" and would solely bear the costs of its own network upgrades.

¶ 11    Stanly Solar submitted a third-party PPA bid into the CPRE. On 6 December 2018, Stanly Solar was notified that it had been selected in Step 1. At that time, it appeared that the project likely would not be able to achieve interconnection by the 1 January 2021 in-service deadline. However, Stanly Solar opted to proceed to Step 2 and posted a $1 million surety bond as Proposal Security on 4 January 2019. Stanly Solar's initial surety bond was rejected for failure to comply with the proper form. Stanly Solar posted a revised surety bond on 5 February 2019, which was accepted. On 10 April 2019, Stanly Solar was notified that it had been selected as a winning bid and would have to sign a PPA or withdraw from the CPRE and forfeit its Proposal Security.

¶ 12    On 7 June 2019, Stanly Solar received a Facilities Study Report which indicated that it would take approximately two years from the start of construction to achieve interconnection. At a construction planning meeting on 21 June 2019, Duke indicated that April 2021 was a likely in-service date for Stanly Solar's

Proposal. At no point did Stanly Solar receive notification from the IA during Step 2 that its interconnection date might be later than 1 January 2021. Neither was Stanly Solar provided the option to withdraw during Step 2 of the selection process.

¶ 13        On 26 June 2019, Stanly Solar informed the IA that the Interconnection Facilities and System Upgrades for its proposal would not be completed by 1 January 2021. Stanly Solar then requested to withdraw its proposal and have its Proposal Security returned, pursuant to Section VI(A) of the RFP. Stanly Solar's request was denied on 5 July 2019. The IA's stated justification for the denial was: (1) "The IA has not informed the MP that interconnection cannot be completed by [1 January 2021];" (2) "Duke Transmission has yet to establish a date for completion of associated system upgrades, and, ergo, there has not been a determination that the system upgrades 'will not be completed until at least July 2021;'" and (3) "Should Duke Transmission fail to complete its responsibilities necessary for the MP to interconnect by the established COD, that would be a contract dispute pursuant to the terms of the PPA and not something to be adjudicated before the fact." On 8 July 2019, Stanly Solar clarified that Duke's Transmission Group had told Stanly Solar that the project would not reach interconnection until at least April 2021. The IA did not respond to Stanly Solar's 8 July 2019 request.

¶ 14        On 11 July 2019, Stanly Solar received a final Interconnection Agreement, which confirmed that the projected in-service date was not until 31 May 2021.

*C. Procedural History*

¶ 15        On 14 January 2020, Stanly Solar filed a Motion for Return of CPRE Proposal Security with the North Carolina Utilities Commission. Stanly Solar argued it is entitled to return of its Proposal Security because (1) Stanly Solar should have been able to withdraw during Step 2 without forfeiting its Proposal Security; (2) failure to return the Proposal Security will result in inequitable treatment as compared to Duke-sponsored proposals; and (3) refunding Stanly Solar's Proposal Security will not cause harm to any party.

¶ 16        Accion responded to Stanly Solar's Motion for Return of CPRE Proposal Security on 20 February 2020. Accion argued, among other things, that Stanly Solar misconstrues Section VI(A) of the RFP and that the RFP does not entitle Stanly Solar to a return of its Proposal Security under the specific events occurring during Stanly Solar's bid process. The Companies filed a joint response to Stanly Solar's Motion on 24 February 2020. The Companies argued that Section VI(A) does not entitle Stanly Solar to a refund of its Proposal Security and treatment of the Duke-sponsored proposals is consistent with the RFP.

¶ 17        Stanly Solar filed a Reply in Support of Motion for Return of CPRE Proposal Security on 13 March 2020. To which Accion responded on 21 April 2020.

¶ 18        On 20 October 2020, the Commission entered an Order Denying Motion for Return of CPRE Proposal Security. The Commission concluded "that the provisions

of Sections II(F) and VI(A) of the Tranche 1 RFP providing for the return of Proposal Security upon withdrawal are inapplicable to Stanly because Stanly, as a Late State Proposal, was not specifically evaluated by the T&D Sub-Team during Step 2." According to the Commission, "the right to withdraw provided in Section VI(A) is only available to projects that have undergone the Step 2 evaluation by the T&D Sub-Team." Stanly Solar's proposal was not included in the Step 2 grouping study and was not evaluated by the T&D Sub-Team but evaluated in the normal course of the interconnection application process, because it was a Late-Stage Proposal, and thus, a critical element of Section VI(A) is not present. The Commission goes on to point out that Stanly Solar's proposal was instead evaluated under Section VI(C) of the RFP, which is specific to Late State Proposals and does not have a similar withdrawal provision to that found in Section VI(A).

¶ 19    The Commission similarly concluded that Section II(F) of the RFP does not entitle Stanly Solar to receive a refund of their Proposal Security. Section II(F) provides for the Proposal Security to be returned if a proposal is eliminated by the IA for "failure to meet any required RFP criteria or action. Here, the fact that the proposals in-service date was projected to be after the Tranche 1 in-service deadline of 1 January 2021 did not eliminate the proposal. A proposal was only required to be eliminated if the in-service date was projected to be after 1 July 2021. As Stanly Solar states in its Motion, its proposal was projected to have an in-service date of April

2021. Thus, the IA was not required to eliminate Stanly Solar's proposal and the IA in fact notified Stanly Solar that its proposal was selected as a winning bid. Thus, the Commission concluded that Section II(F) does not entitle Stanly Solar to have its Proposal Security returned.

¶ 20          The Commission also concluded that Stanly Solar's motivation behind requesting their Proposal Security be returned was due to an increase in solar panel costs, and not because the projected in-service date was after 1 January 2021, as Stanly Solar's Motion claims. Finally, the Commission concluded "that Duke acted reasonably in requiring the Step 2 Proposal Security with 'the intent . . . to protect integrity of the RFP process by ensuring that projects that are moved into the Step 2 evaluation actually move forward to PPA if selected as a winning project.'" Thus, the Commission concluded that Duke was reasonable in not releasing Stanly Solar's Proposal Security pursuant to the CPRE Tranche 1 and dismissed Stanly Solar's Motion.

¶ 21          Three Commissioners dissented from the Commission's majority opinion. The dissenting Commissioners did not argue that the majority misinterpreted or misapplied the procedures found in the Tranche 1 RFP. However, these Commissioners concluded that the procedures found in the Tranche 1 RFP "created a structural inequity . . . between utility-sponsored proposals and those of market participants such as Stanly Solar." These Commissioners would allow Stanly Solar's

Motion for a return of the CPRE Proposal Security.

On 21 December 2020, Stanly Solar filed Notice of Appeal.

## II.    Standard of Review

The extent of appellate review of decisions from the North Carolina Utilities Commission is described in the North Carolina General Statutes § 62-94. There the General Assembly has stipulated that "any . . . order made by the Commission under the provisions of [Chapter 62] shall be prima facie just and reasonable." N.C. Gen. Stat. § 62-94(e) (2020).

> The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional provisions, or
> (2) In excess of statutory authority or jurisdiction of the Commission, or
> (3) Made upon unlawful proceedings, or
> (4) Affected by other errors of law, or
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or
> (6) Arbitrary or capricious.

N.C. Gen. Stat. § 62-94(b). "In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error." N.C. Gen. Stat. § 62-94(c).

"The Commission's findings may not be reversed or modified by a reviewing court merely because the court would have reached a different finding or determination upon the evidence." *State ex rel. Utils. Comm'n v. Carolina Water Serv.*, 225 N.C. App. 120, 125, 738 S.E.2d 187, 191, *disc. rev. denied*, 366 N.C. 580 (2013) (citation omitted); *see also State ex rel. Utils. Comm'n, Carolina Power & Light Co. v Carolina Indus. Grp. for Util. Rates*, 130 N.C. App. 636, 639, 503 S.E.2d 697, 699-700 (1998) ("[W]here there are two reasonably conflicting views of the evidence, the appellate court may not substitute its judgment for that of the Commission.").

## III. Discussion

Stanly Solar argues on appeal that the Commission erred in (1) concluding that Stanly Solar could not withdraw from Tranche 1 without forfeiting its Proposal Security; (2) in failing to address Stanly Solar's claim of inequitable treatment in its Order; and (3) in rejecting Stanly Solar's claim that failure to authorize the return of Stanly Solar's Proposal Security would result in inequitable treatment of the Stanly Solar Proposal, in violation of N.C. Gen. Stat. § 62-110.8(d) and Commission Rule R8-71. We will address these arguments in the order they are presented.

*A. Withdrawal without Forfeiting Proposal Security*

Stanly Solar argues the Commission incorrectly interpreted the terms of the RFP. Stanly Solar contends that the Commission erred in concluding that Section VI(A) does not apply to Late Stage Proposals because Late Stage Proposals are to be

evaluated under Section VI(C) of the RFP. According to Stanly, Solar Section VI(A) establishes standards for dealing with the in-service deadline for all projects.

¶ 27        Section VI(A) of the RFP reads in its entirety:

> In the event that the T&D Sub-Team determines during the Step 2 evaluation process that any required Interconnection Facilities or System Upgrades cannot be completed by January 1, 2021, but can be completed by July 1, 2021, the IA will notify the MP of the projected completion date of the Interconnection Facilities and System Upgrades and the MP will have the option to elect to either allow the Proposal to remain in the RFP or withdraw the Proposal from the RFP. If the T&D Sub-Team determines that any required Interconnection Facilities or System Upgrades cannot be completed by July 1, 2021, the IA will remove the Proposal from further consideration. For the avoidance of doubt, the term of all PPAs shall be 20 years from the date of commercial operation as provided for in the PPA.

¶ 28        The plain language of Section VI(A) makes clear that the section's provisions only apply to proposals which the T&D Sub-Team determined during Step 2 of the evaluation process would not meet the in-service deadline because any required Interconnection Facilities or System Upgrades could not be completed by 1 January 2021. The T&D Sub-Team is a subset of the team that evaluates the proposals submitted under the RFP, which specifically assesses and assigns system upgrade costs to Proposals. During Step 2 of the evaluation process, the T&D Sub-Team was to assess the system impact of the Proposals in the order ranked by the IA and assign any System Upgrade costs attributable to each Proposal. Late State Proposals were

not evaluated during a System Impact Grouping Study, and any Proposal which elected to be evaluated as a Late Stage Proposal was deemed to include any cost of Network Upgrades in the MP's PPA price. It is undisputed that Stanly Solar's Proposal was a Late Stage Proposal. As a Late Stage Proposal, Stanly Solar's Proposal was not evaluated by the T&D Sub-Team during Step 2 and, thus, did not fall within the protection of Section VI(A).

¶ 29      A determination by the Commission is considered *prima facie* just and reasonable. *State ex rel. Utils. Comm'n v. Ray*, 236 N.C. 692, 697, 73 S.E.2d 870, 874 (1953). The burden is on the appellant to demonstrate an error of law in the proceedings. *State ex rel. Utils. Comm'n v. Champion Papers, Inc.*, 259 N.C. 449, 456, 130 S.E.2d 890, 895 (1963). "To be arbitrary and capricious, the Commission's order would have to show a lack of fair and careful consideration of the evidence or fail to display a reasoned judgment." *State ex rel. Utils. Comm'n v. Piedmont Nat. Gas Co.*, 346 N.C. 558, 573, 488 S.E.2d 591, 601 (1997) (citation omitted). Based on a review of the whole record, we conclude that Stanly Solar has not sustained its burden of demonstrating either that the Commission's order was unsupported by competent, material, and substantial evidence or that the order failed to display a reasoned judgment. In fact, the Commission's order is directly in line with the plain language of the RFP at issue. Thus, we conclude that the Commission correctly interpreted the RFP.

*B. Inequitable Treatment*

¶ 30    Stanly Solar next argues that the Commission erred by failing to address Stanly Solar's inequitable treatment argument. Stanly Solar asserts that while the Commission's Order mentions that Stanly Solar's motion made an inequitable treatment argument, the Order fails to address the argument in its discussion and conclusions. Stanly Solar also argues that the Commission erred by rejecting Stanly Solar's claim to have its Proposal Security returned due to inequitable treatment in violation of N.C. Gen. Stat. § 62-110.8(d) and Rule R8-71. We will address these issues together.

¶ 31    According to Stanly Solar, the Commission's failure to address the argument violated N.C. Gen. Stat. § 62-79(a) which requires that all final order and decisions of the Commission "be sufficient in detail to enable the court on appeal to determine the controverted questions presented in the proceedings." Stanly Solar's argument on appeal contends that the Commission only summarized the arguments from Stanly Solar's Motion in its Order and made no findings or conclusions on the issue. We disagree.

¶ 32    Stanly Solar's argument ignores the following portion from the "Discussion and Conclusions" of the Commission's Order:

> Further, the CPRE Program was enacted in part to give utilities more control over purchases from solar facilities than allowed under the federal Public Utility Regulatory

> Policies Act of 1978, Pub. L. No. 95-617, 92 Stat. 3134
> (PURPA). As such, utilities should be allowed to include
> reasonable guidelines for participation in the CPRE
> Program. The Commission is persuaded that Duke acted
> reasonably in requiring the Step 2 Proposal Security with
> "the intent . . . to protect integrity of the RFP process by
> ensuring that projects that are moved into the Step 2
> evaluation actually move forward to PPA if selected as a
> winning project." . . . Contrary to Stanly's assertions, the
> forfeited Proposal Security does not result in a windfall to
> Duke but is credited to Duke's customers.

We recognize that this portion of the Order does not explicitly use the phrase inequitable treatment. However, this portion comes after the Commission's discussion of Sections II(F) and VI(A) of the RFP concluded, and addresses the heart of Stanly Solar's argument, specifically the charging of a nonrefundable Proposal Security following Step 2 to third-party MP bids and not proposals from entities associated with Duke Energy. The Commission's Order would have been better structured and potentially clearer if the Commission had organized its Order by utilizing subheadings for each argument or expressly stating it was addressing each of Stanly Solar's claims. However, that is not the standard required. The Commission's Order is only required to provide the reviewing court with sufficient information to allow it to determine the controverted questions presented in the proceedings. *State ex rel. Utils. Comm'n v. Conservation Council of N.C.*, 312 N.C. 59, 62, 320 S.E.2d 679, 682 (1984); N.C. Gen. Stat. § 62-79(a). Here, the Commission's Order is sufficient to indicate to this Court that the Commission concluded the

decision to charge a nonrefundable Proposal Security to some bids but not others in Tranche 1 of the RFP, based on the status of the entity making the bid, was reasonable and not inequitable.

¶ 33 The IA was tasked to "develop and publish the methodology used to evaluate responses received pursuant to a competitive procurement solicitation and to ensure that all responses are treated equitably." N.C. Gen. Stat. § 62-110.8(d). Additionally, the Commission's own Rules required the IA to ensure that third-party MPs' Proposals and the electric public utility's Self-developed Proposals are treated equitably. Rule R8-71(d). Stanly Solar argued the IA did not accomplish this.

¶ 34 As discussed above, the Commission concluded that charging a nonrefundable Proposal Security to third-party MPs and not proposals that came from Duke affiliated entities was reasonable. The interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference. *State ex rel. Utils. Comm'n v. Friesian Holdings, LLC*, 2022-NCCOA-32, ¶¶ 18, 38 (citations omitted). We believe the same deference is applicable to an agency' determination a statute was complied with. In this case, the Commission found that the delineation of treatment between third-party MP bids and Duke affiliated bids was reasonable. Stanly Solar argues this treatment was inequitable solely because one subset of bids was charged a nonrefundable Proposal Security and one subset of bids was not. Equitable treatment does not mean the exact same treatment. The Commission found

the IA's treatment of the different types of bids reasonable. We see no reason to disturb this decision and give the Commission's decision its due deference.

## IV.    Conclusion

¶ 35    For the foregoing reasons we affirm the Commission's order.

AFFIRMED.

Chief Judge STROUD and Judge HAMPSON concur.